FILED
WILLIAMSPORT

APR 0 4 2002

PER _____
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER FURNARI,           :

        Petitioner,           :
                                           CIVIL ACTION NO.

v.                             :           4:CV-02-555

UNITED STATES PAROLE COMMISSION :
and WARDEN, Federal Correctional
Institution - Allenwood, Pa.,  :

        Respondent.          :

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241
BY A PRISONER IN FEDERAL CUSTODY

    Christopher Furnari petitions this Court pursuant to 28 U.S.C. § 2241 for a Writ of Habeas Corpus, challenging the decision of the respondent United States Parole Commission dated April 24, 2001, denying him release on parole from a federal sentence imposed in 1987. The Parole Commission's action was ostensibly a <u>de novo</u> reconsideration, undertaken as the result of an order entered in prior habeas corpus proceedings in this Court. In support of his petition for release from unlawful custody, petitioner Furnari, by undersigned counsel, states:

## PARTIES

1. The petitioner, Christopher Furnari, is an inmate at the Federal Correctional Institution - Allenwood, located in White Deer, Pennsylvania, within the jurisdiction of this Court. His Bureau of Prisons Register Number is 19815-054. Petitioner will be 78 years old as of April 30, 2002.

2. The respondent United States Parole Commission ("USPC") is an independent agency within the United States Justice Department, charged by law with considering and setting petitioner's actual date of release from confinement. 18 U.S.C. § 4203(b) (prospectively repealed). By virtue of the USPC's actions, challenged in this petition, petitioner Furnari continues, after more than 15 years (since November 19, 1986), to be held in the custody of the Attorney General.

3. The respondent Warden of the medium security Federal Correctional Institution - Allenwood is responsible for the terms and conditions of the petitioner's confinement. The warden is sued solely in an official capacity as petitioner's immediate custodian; no actions of the Warden or of the Bureau of Prisons are at issue.

## JURISDICTIONAL ALLEGATION

4. This Court has jurisdiction to issue a writ of habeas corpus and to grant relief as law and justice require under 28 U.S.C. §§ 1331, 2241(a),(c)(1) and 2243, because the petitioner is confined within the territorial jurisdiction of this Court, where he is held in the custody of the respondents under color of the authority of the United States.

## FACTUAL ALLEGATIONS INCLUDING EXHAUSTION OF REMEDIES

5. On or about February 25, 1985, petitioner was named in an indictment filed in the United States District Court for the Southern District of New York, under Docket No. 85-CR-139. Following an eleven-week jury trial on a third superseding indictment (No. SSS 85-CR-139 (RO)), Mr. Furnari was convicted of RICO conspiracy, 18 U.S.C. § 1962(d), a substantive RICO count, id. § 1962(c), conspiracy to commit extortion and twelve counts of extortion under the Hobbs Act, id. § 1951, and six counts of aiding and abetting labor bribery in violation of the Taft-Hartley Act, 29 U.S.C. § 186(b) and 18 U.S.C. § 2.

6. The offenses charged in the indictment concerned certain activities of "the Commission," which was alleged to be a sort of power-sharing and dispute-resolving board for the five La Cosa Nostra ("LCN") crime "families" of New York City. In his capacity as "consigliere" of the "Lucchese Family" of LCN, petitioner allegedly "from time to time," between the early 1980s and 1985, was delegated to represent the Lucchese Family to the Commission." Third Superseding Indictment ¶10.d., at 10.

    a. The RICO count of the indictment alleged that petitioner Furnari, his five co-defendants and others "constituted an enterprise as defined in" 18 U.S.C. § 1961(4), "that is, a group of individuals associated in fact, which enterprise is often described as the 'Commission' of La Cosa Nostra ('The Commission') ...." Id. ¶1, at 2.

    b. As stated in the RICO count, "[e]ach La Cosa Nostra Family was a separate organization." Id. ¶5, at 4. "The

-3-

Commission was an enterprise distinct from the individual Families, but it was comprised of Bosses and Acting Bosses -- acting in concert with other high-ranking officers -- from the five La Cosa Nostra Families which had their headquarters in New York City." Id. ¶6, at 4. "The general purpose of the Commission enterprise was to regulate and facilitate the relationships between and among La Cosa Nostra Families." Id. ¶8, at 5.

  c.  "Among the means and methods" by which the defendants allegedly "conducted and participated in the conduct of the enterprise's affairs," the RICO count charged, id. ¶9, at 6, were these: "b. The Commission resolved a leadership dispute within the Bonanno Family, and between the Bonanno Family and other La Cosa Nostra Families, by authorizing the murders of Carmine Galante, a/k/a 'Lilo,' who was Boss of the Bonanno Family, and Leonard Coppola and Giuseppe Turano, his associates"; and "c. The Commission authorized certain other murders." Id. at 8. Petitioner Furnari was not accused of participating, either directly or indirectly, in the Galante murders, id. ¶¶ 32-34, at 27-28, nor in any others.

  d.  The Hobbs Act extortion count(s) of the indictment specifically charged that the Commission controlled the allocation of contracts to pour concrete in the New York City construction industry where the costs for concrete exceeded $2 million. Id. ¶9.a., at 7. "The Commission exploited its control over these concrete-pouring contracts in order to demand and receive payoffs from concrete contractors." Id.

e. The Taft-Hartley labor bribery counts of the indictment specifically consisted of the receipt by co-defendant Ralph Scopo, president and business manager of the Concrete Workers District Council, of the extorted payoffs from the concrete contractors.

f. The RICO charge further encompassed an accusation of loansharking in violation of 18 U.S.C. §§ 891-892, in which petitioner was also not alleged to have had any involvement. Id. ¶35, at 28.

7. On January 13, 1987, Judge Richard Owen sentenced petitioner Furnari to serve an aggregate term of 100 years' imprisonment, consisting of five consecutive 20-year terms and several additional concurrent terms, under pre-Sentencing Reform Act law. This kind of sentence allows parole, in the discretion of the respondent USPC, after service of at least ten years. 18 U.S.C. § 4205(a) (former provision). Petitioner was also ordered to pay a fine of $240,000 and special assessments totalling $900. Judgment was entered that day.

8. Following an initial remand of a co-defendant's appeal (see United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989) (in banc)), the Second Circuit affirmed petitioner's convictions and sentence. See United States v. Salerno, 868 F.2d 524, 527-31, 534-38, 540-43 (2d Cir.), cert. denied, 491 U.S. 907 (1989).

9. On December 3, 1996, when petitioner had served ten years (during which he "substantially observed the rules of the institution or institutions to which he has been confined," 18

-5-

U.S.C. § 4206(a)) and thus had achieved parole eligibility, the USPC granted petitioner a parole hearing.

a.  Prior to the hearing, on January 2, 1996, Assistant U.S. Attorney David Kelley (S.D.N.Y.), chief of organized crime prosecutions, wrote a letter to the sentencing judge, acknowledging that petitioner was not in fact involved in the one murder plot described in the indictment (the Galante/Coppola/Turano murders), which took place prior to petitioner's alleged membership on the "Commission."  By order dated January 17, 1996, the sentencing court directed that the 1/2/96 Kelley letter be attached as a correction to petitioner's Pre-Sentence Investigation Report (PSI) and forwarded to the USPC.

b.  AUSA Kelly appeared at the December 1996 parole hearing and there presented summary, hearsay evidence claiming that between 1975 and 1985 petitioner had ordered or was otherwise vicariously liable for several murders, attempted murders, or conspiracies to murder.  None of these were part of the indictment offenses, nor were they or activities of "the Commission."  Conceding that this information came principally from a Mafia turncoat witness named Anthony Casso, himself an admitted multiple murderer, AUSA Kelley nevertheless asserted that the information was reliable, and that Casso was eligible to appear as a government witness at upcoming trials.

c.  Petitioner, represented by counsel, presented substantial evidence at the 1996 parole hearing contesting the reliability of AUSA Kelley's information.  At no time during the pendency of those parole proceedings did AUSA Kelley disclose to

-6-

the USPC that Casso's credibility as an informant was being questioned by government agents and attorneys as early as 1994, that Casso had failed polygraph examination that year, that he had attempted to tamper with another cooperating witness in late 1994, that in April 1997 Casso admitted numerous additional lies and forms of continuing misconduct including bribery of prison officials, and that no later than mid-1997 Casso had been determined by the government to be a liar, whose "spurious allegations" they would not present in court.

    d. The USPC hearing examiner declared that he presumed evidence coming from a government source to be reliable, assigned petitioner to parole offense severity Category 8 (the most serious), and recommended denial of parole for at least an additional 15 years.

    e. The examiner's recommendation was adopted by the Regional Commissioner by notice dated January 8, 1997, and upheld on appeal August 19, 1997, by the USPC National Appeals Board.

    10. Petitioner then sought habeas corpus relief from this Court. See <u>Furnari v. Warden, FCI-Allenwood, et al.</u>, No. 4:CV-98-0222. During the time that the prior habeas petition was pending, petitioner received a two-year interim review hearing, as mandated by 18 U.S.C. § 4208(h)(2) (prospectively repealed) and 28 C.F.R. § 2.14.

    a. At the 1998 interim hearing, petitioner presented new evidence of the government's disavowal of Casso's credibility as a witness, in the form of an affidavit of an Assistant

-7-

U.S. Attorney which had been presented in the Eastern District of New York to justify the abrogation of Casso's plea and cooperation agreement.

    b. The USPC nevertheless denied a *de novo* hearing and declared itself unpersuaded that the initial information on which it had acted was inaccurate.

11. This Court (Muir, J.) initially denied habeas corpus relief by 18-page Order filed April 12, 1999. On appeal, the Third Circuit reversed and remanded. Furnari v. Warden, 218 F.3d 250 (3d Cir. 2000) (No. 99-3701).

    a. The Court of Appeals held that the USPC's explanation for its failure to reconsider its original decision at the interim hearing violated its statutory obligation under 18 U.S.C. § 4206(b) to provide rational and particularized reasons for its decisions.

    b. The Court of Appeals ruled that "The government's own determination that Casso had lied to it about many matters calls into question whether the Parole Commission had a rational basis for its decision to the extent that decision was based on information from Casso." 218 F.3d at 257.

12. On remand, by Order filed September 28, 2000, this Court (Muir, J.) directed that the USPC either provide petitioner with "a new statement of reasons consistent with the Court [of Appeals'] decision," or else "afford [him] a de novo hearing" within 90 days.

13. In response, the USPC convened a *de novo* hearing on December 8, 2000. The same hearing examiner conducted this

hearing as had presided at the 1998 interim hearing.

a. Although AUSA Kelley did not appear in person at the <u>de novo</u> hearing, a letter from him to the USPC dated September 25, 2000, was considered as evidence. In that letter, Kelley attempted to offer reasons why Casso's "historical information" (a category which apparently included his accusations against Mr. Furnari) could be trusted even though his later statements were false. The 2000 Kelley letter also identified the other sources of information which supposedly corroborated Casso, which were the same as he had cited in 1996. The Kelley letter gave only summary conclusions, not specific facts or details, and once again did not disclose the underlying evidence, such as FBI Form 302 reports of debriefings or transcripts of trial testimony. Petitioner was again represented by counsel, who presented written and oral rebuttal of AUSA Kelley's charges, including transcripts of the testimony of the very witnesses to whom the prosecutor pointed.

b. At the conclusion of the hearing, the examiner announced that he was recommending that the case be considered under the USPC's "original jurisdiction" (rather than being initially decided by the Regional Commissioner) and that petitioner receive a 15-year set-off from the day of the new hearing (<u>i.e.</u>, that petitioner be released no sooner than a date four years later than had been set after the 1996 hearing).

14. The Regional Commissioner did not place petitioner's case in the USPC's "original jurisdiction," as the examiner had recommended. Considering the case himself, however, the Commis-

sioner upheld the examiner's recommendation of a 15-year set-off, but made it retroactive to the date of the original hearing. As the reasons for the decision, the Regional Commissioner stated:

> Your offense behavior has been rated as Category Eight severity because it involved murder and conspiracy to murder and multiple separate acts of extortion through racketeering offenses. ... [A] decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating factors: You were involved in the hierarchy, first as a Capo and later as a Consigliere[,] of a major organized crime organization and were involved either directly [sic; insert "or indirectly"?] in the planning or approval of murder and/or attempted murder. ... [T]here is sufficient corroboration of information provided by Casso to rely upon the information supplied by Casso notwithstanding the affidavit from ... the Eastern District of New York.

Notice of Action (Dec. 27, 2000). Except for the addition of the last sentence, this notice tracked almost verbatim the USPC's post-hearing notice of January 8, 1997.

15. Again, petitioner appealed to the USPC National Appeals Board, supported by a letter of counsel dated January 26, 2001. On April 24, 2001, the National Appeals Board denied the appeal in a three-page ruling explaining why the USPC found Casso's allegations of murder and attempted murder, as related by AUSA Kelley, to be sufficiently corroborated or reliable.

16. The decision of the National Appeals Board is the final decision of the USPC. 28 C.F.R. § 2.26(c). Petitioner has therefore exhausted his administrative remedies.

## CLAIMS FOR RELIEF

17. <u>Violation of Statute, of Law of the Case, and of Due Process -- Decision Without Rational Statement of Reasons.</u> The "reasons" given by the National Appeals Board in April 2001 for denial of parole to petitioner violate the law of the case, the USPC's governing statute, and the due process clause.

18. <u>Violation of Ex Post Facto Clause.</u> In denying petitioner parole in April 2001, the National Appeals Board relied on an adverse change in the Parole Guidelines for Category 8 offenses which created a significant risk of prolonging petitioner's incarceration, and did in fact prolong his incarceration, as compared with the rules which existed at the time of commission of the offenses for which he was convicted.

19. <u>Violation of Due Process -- Decision Without Sufficient Basis in Fact.</u> The reasons given by the USPC to deny petitioner parole in April 2001 lack a sufficient basis in fact.

20. <u>Violation of Due Process, Statute and Commission Rules -- Decision Predicated on Unreliable Evidence.</u> The USPC decision denying petitioner parole violated its own criteria, authoritatively interpreting and implementing the governing statute and regulations, for judging the reliability of non-conviction information.

21. <u>Violation of Due Process, the Governing Statute and Regulation, and of Commission Rules -- Decision on Irrelevant Facts.</u> Respondent USPC abused its discretion by disregarding its guidelines and assigning petitioner Furnari to Category

-11-

Eight based on past alleged criminal conduct which was not part of his "present offense behavior" (as required by the respondent USPC's authoritative construction of the statute and its own regulation), i.e., conduct which was not part of LCN Commission activities.

WHEREFORE, Petitioner prays that this Court:

(1) Enter an order directing the respondents to show cause before this Court why a Writ of Habeas Corpus should not be issued;

(2) After full consideration on the merits, issue the writ of habeas corpus, ordering the respondent USPC to place petitioner on parole for the balance of his sentence, and the respondent Warden to release him from physical confinement; and

(3) Grant such other or further relief as law and justice require.

Dated: April 3, 2002

Respectfully submitted,
THE PETITIONER

By: PETER GOLDBERGER
JAMES H. FELDMAN, JR.
50 Rittenhouse Place
Ardmore, PA 19003
(610) 649-8200

Attorneys for the Petitioner