**FILED**
WILLIAMSPORT, PA

APR 2 4 2002

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER FURNARI,                  :

         Petitioner,          :          **CIVIL ACTION**
                                      **NO. 4:02-CV-555**
   v.                              :
                                      (Judge Muir)
UNITED STATES PAROLE COMMISSION :
and WARDEN, Federal Correctional
Institution - Allenwood, Pa.,         :

        Respondent.           :

---

**MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. § 2241 BY A PRISONER IN FEDERAL CUSTODY**

#### TABLE OF CONTENTS

I.  PROCEDURAL HISTORY ....................................... 1

II.  ARGUMENT ................................................ 10

    A.  The Parole Commission Violated Due Process, the
    Controlling Statute, its Own Regulations and the Law of
    the Case, When It Failed to Provide Adequate Reasons
    for Crediting Information Supplied by a Mob Informant
    Whom the Government Concedes Has Lied ................... 10

        1.  Insufficiency Under the Law of the Case ........... 12

        2.  Remedy ........................................... 15

    B.  The Parole Commission Violated the Ex Post Facto
    Clause by Relying on a Provision of its Regulations
    Which Created a Significant Risk of Prolonging Mr.
    Furnari's Incarceration, as Compared With the Provision
    in Effect at the Time of Commission of the Conviction
    Offenses ............................................... 16

C.  The Parole Commission's Decision Rests on Evidence Lacking Sufficient Indicia of Reliability to Satisfy Due Process or the Governing Statutory Criteria, as Authoritatively Interpreted in the USPC's Own Rules, and Without a Basis in Fact ............................. 21

    1.  Lack of Factual Basis ............................. 22

    2.  Unreliability of Sources .......................... 24

D.  The Parole Commission's Reliance on Conduct Other than the Offenses of Conviction to Set Petitioner Furnari's Offense Severity Category Violates the Commission's Own Rules as well as Due Process ........... 25

III.  CONCLUSION ......................................... 29

## TABLE OF AUTHORITIES

**Cases:**

Arias v. U.S. Parole Comm'n, 648 F.2d 196 (3d Cir. 1981) .... 10

Auer v. Robbins, 519 U.S. 452 (1997) ........................ 28

Block v. Potter, 631 F.3d 233 (3d Cir. 1980) ............... 16

Bowles v. Seminole Rock and Sand Co., 325 U.S. 410 (1994) ... 28

Campbell v. United States Parole Commission,
    704 F.2d 106 (3d Cir. 1983) ............................ 22

Christensen v. Harris County, 529 U.S. 576 (2000) ........... 27

Coady v. Vaughn, 251 F.3d 480 (3d Cir. 2001) ............... 19

Furnari v. Warden, 218 F.3d 250 (3d Cir. 2000) .... 7, 11-14, 22

Gambino v. Morris, 134 F.3d 156 (3d Cir. 1998) ...... 15, 21, 24

Garner v. Jones, 529 U.S. 244 (2000) ..................... 19-21

Lindsey v. Washington, 301 U.S. 397 (1937) ................. 20

Lopez v. Davis, 531 U.S. 230 (2001) ........................ 28

Marshall v. Lansing, 839 F.3d 933 (3d Cir. 1988) ........... 15

Reno v. Koray, 515 U.S. 50 (1995) .......................... 28

Stiver v. Meko, 130 F.3d 574 (3d Cir. 1997) ................ 28

<u>U.S. ex rel. Farese v. Luther</u>, 953 F.3d 49 (3d Cir. 1992) ... 29

<u>U.S. ex rel. Forman v. McCall</u>, 709 F.2d 852 (3d Cir. 1983) .. 19

<u>United States v. Indelicato</u>, 865 F.2d 1370
    (2d Cir. 1989) (<u>en banc</u>) ................................. 4

<u>United States v. Salerno</u>, 868 F.2d 524 (2d Cir.),
    <u>cert. denied</u>, 491 U.S. 907 (1989) ..................... 2, 5

<u>Zannino v. Arnold</u>, 531 F.2d 687 (3d Cir. 1976) ............. 21

**Constitution, Statutes and Rules:**

U.S. Const., art. I, § 9, cl. 3 (ex post facto) ...... 1, 17, 20
U.S. Const., art. I, § 10 (ex post facto - states) .......... 19
U.S. Const., amend. V (Due Process) .................. 1, 11, 21

18 U.S.C. § 2 ................................................. 4
18 U.S.C. §§ 891-892 ......................................... 3
18 U.S.C. § 1951 ............................................. 4
18 U.S.C. § 1961 ............................................. 2
18 U.S.C. § 1962 ............................................. 4
18 U.S.C. § 4205 .......................................... 4, 30
18 U.S.C. § 4206 ...................... 5, 7, 11, 26, 28
18 U.S.C. § 4207 ............................................ 21
18 U.S.C. § 4208 ............................................. 7

28 U.S.C. § 2241 ............................................. 1
28 U.S.C. § 2243 ........................................ 16, 30

29 U.S.C. § 186 ............................................. 4

28 C.F.R. § 2.13 ........................................... 11
28 C.F.R. § 2.14 ............................................ 7
28 C.F.R. § 2.19 ........................................... 21
28 C.F.R. § 2.20 .................... 9, 17, 21, 26, 28, 29
28 C.F.R. § 2.20, Note ................................. 17, 20
28 C.F.R. § 2.20, Note (pre-1994 vers.) ................... 18
28 C.F.R. § 2.26 ........................................... 10

**Miscellaneous:**

47 Fed.Reg. 56336 (Dec. 16, 1982) ......................... 18
59 Fed.Reg. 25813 (May 18, 1994) ................... 17, 18, 20

USPC Rules & Procedures Manual .................. 21, 25, 26, 28

<u>www.usdoj.gov/uspc/readingroom/ProcedureManual</u> .............. 26

## MEMORANDUM IN SUPPORT OF PETITION

Christopher Furnari has petitioned this Court pursuant to 28 U.S.C. § 2241 for a Writ of Habeas Corpus, challenging the decision of the respondent United States Parole Commission to deny him release on parole from a federal sentence imposed in 1987, and not to reconsider parole until December 2011 (when Mr. Furnari would be 87 years old).  The Parole Commission's action was ostensibly a de novo reconsideration, undertaken as the result of an order entered in prior habeas corpus proceedings in this Court.  The USPC's decision violates the law of the case, the governing statute, and the Constitution's Ex Post Facto Clause and Fifth Amendment Due Process Clause.  This Court should therefore enter an order directing the respondents to show cause why a Writ of Habeas Corpus should not be issued. Then, after full consideration on the merits, the Court should issue the writ of habeas corpus, ordering the Parole Commission to place Mr. Furnari on parole for the balance of his sentence, and the Warden to release him from physical confinement.

### I.   PROCEDURAL HISTORY

On February 25, 1985, Christopher Furnari was named in an indictment filed in the United States District Court for the Southern District of New York.  That indictment was eventually superseded three times.  The charged offenses concerned certain activities of "the Commission," which was alleged to be a sort of power-sharing and dispute-resolving board for the five La Cosa Nostra ("LCN") crime "families" of New York City.  In his

capacity as "consigliere" of the "Lucchese Family" of LCN,[1]  Mr. Furnari allegedly "from time to time," between the early 1980s and 1985, was delegated to represent the Lucchese Family to the Commission."  Third Superseding Indictment, Count One ¶10.d., at 10; Petitioner's Exh. A.[2]

The RICO count alleged that Mr. Furnari, his five co-defendants and others "constituted an enterprise as defined in" 18 U.S.C. § 1961(4), "that is, a group of individuals associated in fact, which enterprise is often described as the 'Commission' of La Cosa Nostra ('The Commission') ...."  Id. ¶1, at 2.  As stated in the RICO count, "[e]ach La Cosa Nostra Family was a separate organization."  Id. ¶5, at 4.  "The Commission was an enterprise distinct from the individual Families, but it was comprised of Bosses and Acting Bosses -- acting in concert with other high-ranking officers -- from the five La Cosa Nostra Families which had their headquarters in New York City."  Id. ¶6, at 4.  "The general purpose of the Commission enterprise was

---

[1] There is some confusion in the record concerning the correct spelling of "Lucchese."  In briefs filed in the appeal of this Court's denial of Mr. Furnari's prior petition for writ of habeas corpus, counsel for the government spelled the name of this LCN "family" as "Luchese," as did counsel for Mr. Furnari.  Mr. Furnari's indictment, the Second Circuit on direct appeal, United States v. Salerno, 868 F.2d 524, 528 (2d Cir. 1989), and the Third Circuit in the prior habeas proceedings used "Lucchese."  In this memorandum, we have opted for the spelling found in the indictment and adopted by the Courts of Appeals.

[2] Petitioner's exhibits, marked A through L, are bound and filed separately.

to regulate and facilitate the relationships between and among
La Cosa Nostra Families." Id. ¶8, at 5.

"Among the means and methods" by which the defendants
allegedly "conducted and participated in the conduct of the
enterprise's affairs," the RICO count charged, id. ¶9, at 6,
were these:  "b.  The Commission resolved a leadership dispute
within the Bonanno Family, and between the Bonanno Family and
other La Cosa Nostra Families, by authorizing the murders of
Carmine Galante, a/k/a 'Lilo,' who was Boss of the Bonanno
Family, and Leonard Coppola and Giuseppe Turano, his associ-
ates"; and "c.  The Commission authorized certain other
murders." Id. at 8.  Petitioner Furnari was not accused of
participating, either directly or indirectly, in the Galante
murders, id. ¶¶ 32-34, at 27-28, nor in any others.[3]

The indictment charged Mr. Furnari with participating in
the affairs of this illegal enterprise, that is, "the Commis-
sion," through a pattern of racketeering activity consisting of
labor bribery and extortion.  The Hobbs Act extortion count(s)
specifically charged that the Commission controlled the alloca-
tion of contracts to pour concrete in the New York City
construction industry where the costs for concrete exceeded $2
million.  Id., Count One ¶9.a., at 7.  See Racketeering Acts 1,
2A - 9A and 10 - 13, and Counts Three, Four, Six, Eight, Ten,
Twelve, Fourteen, and Sixteen through Twenty-One.  "The Commis-

---

[3] The RICO charge further encompassed an accusation of loan-
sharking in violation of 18 U.S.C. §§ 891-892, in which
petitioner was also not alleged to have had any involvement.
Id. ¶35, at 28.

sion exploited its control over these concrete-pouring contracts
in order to demand and receive payoffs from concrete contrac-
tors." Id., Count One ¶ 9.a., at 7.  The Taft-Hartley labor
bribery counts specifically consisted of the receipt by co-
defendant Ralph Scopo, president and business manager of the
Concrete Workers District Council, of the extorted payoffs from
the concrete contractors.  Racketeering Acts 2B-9B; Counts Five,
Seven, Nine, Eleven, Thirteen, and Fifteen.

Following an eleven-week jury trial, Mr. Furnari was
convicted of RICO conspiracy, 18 U.S.C. § 1962(d), a substantive
RICO count, id. § 1962(c), conspiracy to commit extortion and
twelve counts of extortion under the Hobbs Act, id. § 1951, and
six counts of aiding and abetting labor bribery in violation of
the Taft-Hartley Act, 29 U.S.C. § 186(b) and 18 U.S.C. § 2.  On
January 13, 1987, Judge Richard Owen sentenced Mr. Furnari to
serve an aggregate term of 100 years' imprisonment, consisting
of five consecutive 20-year terms and several additional concur-
rent terms, under pre-Sentencing Reform Act law.  This kind of
sentence allows parole, in the discretion of the Parole Commis-
sion after service of at least ten years.  18 U.S.C. § 4205(a)
(former provision).  Petitioner was also ordered to pay a fine
of $240,000 and special assessments totalling $900.  Judgment
was entered that day.  Exh. B.

Following an initial remand of a co-defendant's appeal (see
United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989) (en
banc)), the Second Circuit affirmed petitioner's convictions and

-4-

sentence.  See <u>United States v. Salerno</u>, 868 F.2d 524, 527-31,
534-38, 540-43 (2d Cir.), <u>cert. denied</u>, 491 U.S. 907 (1989).

On December 3, 1996, when Mr. Furnari had served ten years
during which he "substantially observed the rules of the
institution or institutions to which he has been confined," 18
U.S.C. § 4206(a)) and thus had achieved parole eligibility, the
Parole Commission granted petitioner a parole hearing.  Prior to
the hearing, on January 2, 1996, Assistant U.S. Attorney David
Kelley (S.D.N.Y.), chief of organized crime prosecutions, wrote
a letter to the sentencing judge, acknowledging that petitioner
was not in fact involved in the one murder plot described in the
indictment (the Galante/Coppola/Turano murders), which took
place prior to petitioner's alleged membership on the "Commis-
sion."  By order dated January 17, 1996, the sentencing court
directed that the 1/2/96 Kelley letter be attached as a correc-
tion to petitioner's Pre-Sentence Investigation Report (PSI) and
forwarded to the Parole Commission.[4]

AUSA Kelley appeared at the December 1996 parole hearing
and there presented summary, hearsay evidence, based on a letter
he had sent the USPC in August, Exh. D, claiming that between
1975 and 1985 petitioner had ordered or was otherwise vicari-
ously liable for several murders, attempted murders, or conspir-
acies to murder.  None of these crimes was part of the indict-
ment offenses, nor was any an activity of "the Commission."

---

[4] A copy of petitioner's PSI, with the January 1996 letter
attached, is being submitted separately for filing under
seal as an exhibit to the present petition.

-5-

Conceding that this information came principally from a Mafia turncoat witness named Anthony Casso, himself an admitted multiple murderer, AUSA Kelley nevertheless asserted that the information was reliable, and that Casso was eligible to appear as a government witness at upcoming trials.

Petitioner, represented by counsel, presented substantial evidence at the 1996 parole hearing contesting the reliability of AUSA Kelley's information.  At no time during the pendency of those parole proceedings did AUSA Kelley disclose to the Parole Commission that Casso's credibility as an informant was being questioned by government agents and attorneys as early as 1994, that Casso had failed polygraph examination that year, that he had attempted to tamper with another cooperating witness in late 1994, that in April 1997 Casso admitted numerous additional lies and forms of continuing misconduct including bribery of prison officials, and that no later than mid-1997 Casso had been deter-mined by the government to be a liar, whose "spurious allega-tions" they would not present in court.

The Parole Commission hearing examiner declared that he presumed evidence coming from a government source to be reli-able, assigned petitioner to parole offense severity Category 8 (the most serious), and recommended denial of parole for at least an additional 15 years.  The examiner's recommendation was adopted by the Regional Commissioner[5] by notice dated January 8,

_____

[5] AUSA Kelley also submitted a letter to the USPC in support of the recommendation.  Exh. E.

-6-

1997, Exh. F, and upheld on appeal August 19, 1997, by the Parole Commission National Appeals Board.  Exh. G.

Petitioner then sought habeas corpus relief from this Court.  See <u>Furnari v. Warden, FCI-Allenwood, et al.</u>, No. 4:CV-98-0222.  During the time that the prior habeas petition was pending, Mr. Furnari received a two-year interim review hearing, as mandated by 18 U.S.C. § 4208(h)(2) (prospectively repealed) and 28 C.F.R. § 2.14.  At the 1998 interim hearing, petitioner presented new evidence of the government's disavowal of Casso's credibility as a witness, in the form of an affidavit of an Assistant U.S. Attorney which had been presented in the Eastern District of New York to justify the abrogation of Casso's plea and cooperation agreement.  Exh. H.  The Parole Commission nevertheless denied a <u>de novo</u> hearing and declared itself unpersuaded that the initial information on which it had acted was inaccurate.  Exh. I.

This Court (Muir, J.) initially denied habeas corpus relief by 18-page Order filed April 12, 1999.  On appeal, the Third Circuit reversed and remanded.  <u>Furnari v. Warden</u>, 218 F.3d 250 (3d Cir. 2000).  The Court of Appeals held that the Parole Commission's explanation for its failure to reconsider its original decision at the interim hearing violated its statutory obligation under 18 U.S.C. § 4206(b) to provide rational and particularized reasons for its decisions.  The Court of Appeals ruled that "The government's own determination that Casso had lied to it about many matters calls into question whether the Parole Commission had a rational basis for its decision to the

extent that decision was based on information from Casso." 218 F.3d at 257.

On remand, by Order filed September 28, 2000, this Court (Muir, J.) directed that the Parole Commission either provide petitioner with "a new statement of reasons consistent with the Court [of Appeals'] decision," or else "afford [him] a de novo hearing" within 90 days. In response, the Parole Commission convened a de novo hearing on December 8, 2000. The same hearing examiner conducted this hearing as had presided at the 1998 interim hearing.

Although AUSA Kelley did not appear in person at the de novo hearing, a letter from him to the Parole Commission dated September 25, 2000, was considered as evidence. In that letter, AUSA Kelley attempted to offer reasons why Casso's "historical information" (a category which apparently included his accusations against Mr. Furnari) could be trusted even though his later statements were false. Exh. J. The 2000 Kelley letter also identified the other sources of information which supposedly corroborated Casso, which were the same as he had cited in 1996. The Kelley letter gave only summary conclusions, not specific facts or details, and once again did not disclose the underlying evidence, such as FBI Form 302 reports of debriefings or transcripts of trial testimony. Petitioner was again represented by counsel, who presented written and oral rebuttal of AUSA Kelley's charges, including transcripts of the testimony of the very witnesses to whom the prosecutor pointed.

At the conclusion of the hearing, the examiner announced that he was recommending that the case be considered under the Parole Commission's "original jurisdiction" (rather than being initially decided by the Regional Commissioner) and that petitioner receive a 15-year set-off from the day of the new hearing (*i.e.*, that petitioner be released no sooner than a date four years later than had been set after the 1996 hearing).  The Regional Commissioner did not place petitioner's case in the Parole Commission's "original jurisdiction," as the examiner had recommended.  Considering the case himself, however, the Commissioner upheld the examiner's recommendation of a 15-year set-off, but made it retroactive to the date of the original hearing.  As the reasons for the decision, the Regional Commissioner stated:

> ... [A] decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating factors:  You were involved in the hierarchy, first as a Capo and later as a Consigliere[,] of a major organized crime organization and were involved either directly [sic; insert "or indirectly"?] in the planning or approval of murder and/or attempted murder. ... [T]here is sufficient corroboration of information provided by Casso to rely upon the information supplied by Casso notwithstanding the affidavit from ... the Eastern District of New York.

Exh. K (Notice of Action (Dec. 27, 2000)).  Except for the addition of the last sentence, this notice tracked almost verbatim the Parole Commission's post-hearing notice of January 8, 1997.[6]

---

[6] In 1997, the Regional Commissioner found that a "decision more than 48 months above the minimum guidelines in

Again, petitioner appealed to the Parole Commission
National Appeals Board, supported by a letter of counsel dated
January 26, 2001.  On April 24, 2001, the National Appeals Board
denied the appeal in a three-page ruling explaining why the
Parole Commission found Casso's allegations of murder and
attempted murder, as related by AUSA Kelley, to be sufficiently
corroborated or reliable.  Exh. L.  The decision of the National
Appeals Board is the final decision of the Parole Commission.
28 C.F.R. § 2.26(c).  Mr. Furnari has therefore exhausted his
administrative remedies, as required.  See <u>Arias v. U.S. Parole
Comm'n</u>, 648 F.2d 196, 198-99 (3d Cir. 1981).

## II.  <u>ARGUMENT</u>

A.  The Parole Commission Violated Due Process, the
Controlling Statute, its Own Regulations and the
Law of the Case, When It Failed to Provide Adequate
Reasons for Crediting Information Supplied by a Mob
<u>Informant Whom the Government Concedes Has Lied.</u>

During the pendency of Christopher Furnari's prior habeas
petition, his attorneys presented to the Parole Commission an
affidavit from Assistant U.S. Attorney George Stamboulidis
(E.D.N.Y.) which called into question the credibility of Anthony
"Gaspipe" Casso, the mob informant on whom the Parole Commission
had relied in denying Mr. Furnari parole.  Rather than explain

_____(footnote continued)

warranted because you were involved in the hierarchy, first
as Capo and then as Consigliere, of a major organized crime
organization and were involved ... in the ... murders of
numerous individuals."  Exh. F.  This explanation refers to
the Note to the Parole Commission Guidelines, 28 C.F.R.
§ 2.20, which states that whenever an offense is rated in
Category 8, and a parole date more than 48 months above the
bottom of the range (100 months) is given, the USPC will
state the aggravating factors which justify the decision.

why this new information did not require a reversal of its decision, the Parole Commission's National Appeal Board simply stated that "the evidence you have presented does not persuade the Commission that the information it has relied upon is inaccurate." Exh. L. The Appeal Board's failure to explain its reasoning formed the basis for the Court of Appeals' decision reversing this Court's denial of Mr. Furnari's earlier petition and ordering it to "enter a conditional order granting the petition and directing the Parole Commission to provide a new statement of reasons ...." Furnari v. Warden, 218 F.3d at 258. The USPC's action in 2001 in response to this remand failed to comply with the prior Third Circuit decision, the statute (18 U.S.C. § 4206(b)), the regulation (28 C.F.R. § 2.13(c)), Due Process, or this Court's Order on remand. Habeas corpus relief is therefore warranted at this time.

As explained in the following portion of the Argument, despite the prior proceedings in this case, the Parole Commission after the de novo hearing failed to provide the petitioner with a reason consistent with the law of the case or the law of the land for its decision to credit the information provided by Casso. This Court should therefore enter an order directing the respondents to show cause why a Writ of Habeas Corpus should not be issued, and then after full consideration on the merits, issue the writ of habeas corpus, ordering the respondent Parole Commission to place petitioner on parole for the balance of his sentence, and the respondent Warden to release him from physical confinement.

The Third Circuit found the Stamboulidis affidavit to be "significant enough to seriously undermine the basis for the earlier determination," 218 F.3d at 257, because it stated that Casso had "lied in another case and was unreliable." <u>Id.</u> at 252.  The Court of Appeals therefore found that the reasons the Parole Commission had previously given for concluding that Casso was a credible witness "no longer can suffice." <u>Id.</u>  Rather than accept arguments by counsel for the respondents as to how the Parole Commission reached its decision, when that reasoning was not apparent from the record, the Court of Appeals remanded so that the Parole Commission could explain why it either "continues to rely on Casso and to find him credible, or has concluded that there is sufficient additional information tying Furnari to murder to conclude that he is a Category Eight even absent the information provided by Casso." <u>Id.</u> at 256.

Following a <u>de novo</u> hearing in compliance with this Court's order following remand from the Court of Appeals, the Parole Commission's Regional Commissioner on December 27, 2000, once more placed Mr. Furnari's "offense behavior" in Category Eight for the same reason it had placed it in that category in 1997, to wit:  His "offense behavior involved murder and extortion through racketeering offenses."[7]  As he had before, the Regional Commissioner found that a "decision exceeding the lower limit of

_____

[7] In 1997, the Regional Commissioner, as affirmed by the National Appeals Board, had rated Mr. Furnari's "offense behavior ... as Category Eight severity because it involved murder and multiple separate extortions through racketeering offenses."  Exh. F.

-12-

the applicable guideline category by more than 48 months is warranted" (see note 6 ante), because Mr. Furnari was involved in the hierarchy of a major organized crime organization, first as "capo" and then as "consigliere," and because he was alleg-edly involved in several murders.  The Regional Commissioner's decision also included the following language:

> The Commission has determined that there is suffi-cient corroboration of information provided by Casso to rely upon the information supplied by Casso notwithstanding the affidavit from AUSA Stamboulidis of the Eastern District of New York.

Exh. K.  The Commission's decision failed to provide any reasons to support this bare conclusion.  The National Appeal Board's determination of April 24, 2001, affirming the Regional Commis-sioner's decision, Exh. L, is similarly deficient.

As it did in 1997, the Appeals Board in 2001 found credible Casso's claims that Mr. Furnari was involved in several murders. Again, it gave two reasons:  because Mr. Furnari was the leader of the Lucchese Family crew whose members committed the murders, and because Casso's information was corroborated by the testi-mony of another mob informant, Thomas "Tommy Irish" Carew.  In addition to this rehash of the reasons which the Court of Appeals had previously stated could "no longer ... suffice," 218 F.3d at 252,[8] the USPC Appeals Board further stated that it

---

[8] In 1997, the Appeals Board had also found Casso's claims credible on the basis that as "capo of the crew in the Lucchese family" he was "in a position to be informed of murders ordered by the boss of the family," and that given the hierarchical nature of the organization, it is likely Mr. Furnari directed the murderous acts of his crew members. The Board further opined in 1997 that reliable information

found Casso to be credible because: (1) AUSA David Kelley had reported that AUSA Stamboulidis had informed him that he (Stamboulidis) still believed the information Casso had provided in the past was reliable, and (2) "it is not unreasonable to find that Casso may not be worthy of belief when it came to his denial of his own recent serious crimes which could (and did) lead to his removal as a protected federal witness, and still conclude that he had given reliable information on past activities of organized crime." Exh. L.

## 1. Insufficiency Under the Law of the Case.

The Appeal Board's explanation for finding Casso credible despite his history of lying is insufficient for several reasons. First and simplest, it violates the law of the case. Most of the "reasons" the Board advanced are the same as those the Court of Appeals has already found no longer "suffice." Worse, the USPC failed even to address the very question the Court of Appeals ordered it to consider on remand.

The only new reason or explanation the Board advanced ignores the one aspect of the Stamboulidis affidavit the Court of Appeals identified as bringing Casso's reliability in this case into question.[9] The Court of Appeals found that the Stam-

_____(footnote continued)

has been provided by members of criminal organizations in the past and that in "many cases," Casso's information has been corroborated from other sources such as Carew and D'Arco. Exh. G.

[9] Certainly, the fact that one Assistant U.S. Attorney says that another Assistant U.S. Attorney believes aspects of what his discredited former informant said, without more, is not a new "reason" to credit that information.

-14-

boulidis affidavit determined Casso to be unreliable precisely
because he had "lied in another case," 218 F.3d at 252, <u>not</u>
simply because he had lied about his own recent criminal
behavior in order to stay in the witness protection program, as
the USPC's statement of reasons suggested.  Among the lies
chronicled in AUSA Stamboulidis' affidavit were those concerning
Salvatore Gravano and Alphonse D'Arco.  Stamboulidis Affid.
¶ 35, at 17; Exh. H.  For example, AUSA Stamboulidis states that
Casso lied when he implicated Gravano in drug dealing.  <u>Id.</u>; see
also <u>id.</u> ¶ 39, at 19, discussing Casso's "fabrication of
derogatory information about government witnesses D'Arco and
Gravano."  Because the Appeals Board does not explain why
Casso's lies concerning the criminal behavior of <u>others</u> does not
undermine the credibility of the information he supplied
concerning Mr. Furnari, its statement of reasons does not
respond to the requirements of the Court of Appeals' prior
decision.  The reasons given for the denial of parole are there-
fore insufficient under the law of the case.

    2.  **Remedy**

    Where the Parole Commission has failed to provide suffi-
cient reasoning for a decision to refuse parole, the appropriate
habeas relief in most cases is to remand to the Commission to
give it an opportunity either to state reasons or to hold a new
hearing.  See, <u>e.g.</u>, <u>Gambino v. Morris</u>, 134 F.3d 156, 164 (3d
Cir. 1998) (remanding to the district court with instructions to
remand to the Parole Commission).  However, in cases such as
this one, where the Parole Commission fails to provide reasons

even after having been ordered to do so on a prior remand, an order for immediate release may be appropriate. See, e.g., Marshall v. Lansing, 839 F.3d 933 (3d Cir. 1988) (affirming district court order requiring Parole Commission to calculate parole guideline range based on offense conduct of less than one kilogram of cocaine, after earlier remand in which Commission failed to supply reasons for concluding petitioner was responsible for higher amount).

In this case, immediate release is warranted. Given Mr. Furnari's relatively advanced age (he is nearly 78 years old), this Court should exercise its remedial discretion under 28 U.S.C. § 2243 to order immediate release rather than another two years or more of further hearings and appeals. Cf. Block v. Potter, 631 F.3d 233 (3d Cir. 1980) (immediate release called for where petitioner denied parole because of race and where remand would likely consume remainder of sentence). Accordingly, this Court should direct the respondents to show cause why a Writ of Habeas Corpus should not be issued, and then after full consideration on the merits, issue the writ of habeas corpus, ordering the respondent Parole Commission to place petitioner on parole for the balance of his sentence, and the respondent Warden to release him from physical confinement.

B.   The Parole Commission Violated the Ex Post Facto Clause
     by Relying on a Provision of its Regulations Which
     Created a Significant Risk of Prolonging Mr. Furnari's
     Incarceration, as Compared With the Provision in Effect
     at the Time of Commission of the Conviction Offenses.

The USPC violated Ex Post Facto Clause of the Constitution

(art. I, § 9, cl. 3) by basing its 2001 de novo decision on a

note to the Parole Commission Guidelines, 28 C.F.R. § 2.20,

which significantly reduced his chances of release, as compared

with the rule in effect in 1980-85, when the offenses of convic-

tion were committed.   In justifying the denial of parole in this

case the National Appeals Board stated:

> Any one of these crimes (the Schleifer, DeCicco, and
> Taglianetti murders and the attempt to murder
> Abinanti) would result in a parole denial under the
> policy at 28 C.F.R. § 2.20, Offense Behavior Severity
> Index, Notes to Category Eight Offenses.

Exh. L, at 3.   The USPC thus relied on a regulation, adopted in

1994, which provides, in pertinent part:

> Note:   For Category Eight, no upper limits are
> specified due to the extreme variability of the cases
> within this category.   ... However, ... a contract
> murder, ... or a murder carried out to further the
> aims of an ongoing criminal operation, shall not
> justify a parole at any point in the prisoner's
> sentence unless there are compelling circumstances in
> mitigation (e.g., a youthful offender who partici-
> pated in a murder planned and executed by his
> parent).   Such aggravated crimes are considered, by
> definition, at the extreme high end of Category Eight
> offenses.   For these crimes, the expiration of the
> sentence is deemed to be a decision at the maximum
> limit of the guideline range.   (The fact that an
> offense does not fall under the definition contained
> in this rule does not mean that the Commission is
> obliged to grant a parole.)

28 C.F.R. § 2.20, Note.

This version invoked by the USPC in this case went into

effect on June 17, 1994.   59 Fed.Reg. 25813 (May 18, 1994).   The

commentary in the Federal Register states that the USPC expressly intended it to apply "retroactively[, even] when presumptive grants of parole decided by the Commission in previous years come up for review." Id. Prior to 1994, the version in effect at the time Mr. Furnari committed his offense of conviction did not contain the language presuming permanent parole denial in cases of contract murders or murders "to further the aims of an ongoing criminal operation." The prior version read in full:

> Note:  For Category Eight, no upper limits are specified due to the extreme variability of the cases within the category.  For decisions exceeding the lower limit of the applicable guideline category by more than 48 months, the Commission will specify the pertinent case factors upon which it relied in reaching the decision, which may include the absence of any factors mitigating the offense.  This proce-dure is intended to ensure that the prisoner under-stands that individualized consideration has been given to the facts of the case, and not to suggest that a grant of parole is to be presumed for any class of Category Eight offenders.

28 C.F.R. § 2.20, Note (pre-1994 vers.).[10]

The two versions differ in one critical aspect.  The note in effect at the time the USPC considered Mr. Furnari for parole prevented it (absent compelling mitigating circumstances) from granting parole once it determined that his offense involved murders related to organized crime.  The version of this regula-tion in effect at the time Mr. Furnari committed his offenses of conviction did not tie the hands of the USPC in this way.

---

[10] The pre-1994 version of § 2.20 was published on Dec. 16, 1982, in 47 Fed.Reg. 56336.

In <u>Garner v. Jones</u>, 529 U.S. 244 (2000), the Supreme Court applied the Ex Post Facto Clause of Art. I, § 10 to a state parole regulation and found that the regulation passed muster. In that case, after the respondent committed his offense of conviction, the state of Georgia changed its parole regulations to require the state Parole Board to reconsider parole for inmates serving life sentences at least every eight years. Prior to that, the regulations required review every three years. The Supreme Court found no Ex Post Facto violation, because the change in the regulation did not "creat[e] a significant risk of prolonging respondent's incarceration. The requisite risk is not inherent in the framework of [the] amended [rule], and it has not otherwise been demonstrated on the record." 529 U.S. at 251.

The Supreme Court found no "substantial risk of prolonged incarceration" in <u>Garner</u> because the changed regulation did not prevent the Parole Board from considering parole more frequently for prisoners serving life sentences. The new rule simply did not <u>require</u> it. Moreover, the regulations permitted prisoners to bring to the attention of the Parole Board any changed circumstance which might bear on parole eligibility. The Supreme Court therefore concluded that the changed regulation was simply a money saving device for the Parole Board, and had no impact on the time a defendant would ultimately serve. See also <u>Coady v. Vaughn</u>, 251 F.3d 480, 487-88 (3d Cir. 2001); <u>U.S. ex rel. Forman v. McCall</u>, 709 F.2d 852 (3d Cir. 1983), and cases cited.

-19-

In Mr. Furnari's case, the changed regulation <u>does</u> create a "significant risk of prolong[ed] incarceration."  Except in rare cases, it directs the denial of parole at any time to inmates, such as Mr. Furnari, whom the USPC has concluded were involved in contract or organized crime murders.  Prior to that, the USPC was permitted to use its ordinary discretion in such cases -- even absent "compelling circumstances."  The legislative or regulatory removal of a significant opportunity to enjoy a favorable exercise of discretion in a decision affecting the length of incarceration violates the Ex Post Facto Clause. <u>Lindsey v. Washington</u>, 301 U.S. 397 (1937) (change from discretionary to mandatory sentencing, without increase of statutory maximum).  The application to Mr. Furnari of the 1994 amendment to the Note to Category 8 of the Parole Guidelines operated precisely in the manner forbidden by <u>Lindsey</u>.

"Supplementary information" provided by the USPC in the Federal Register at the time it adopted the changed regulation makes it clear that the purpose of the change was to:

> ensure that offenders who are convicted of certain types of aggravated murders, and who have served enough prison time to satisfy the minimum guidelines for Category Eight offenses at 28 C.R.F. 2.20, will not automatically be paroled just because they are "within the guidelines."  The offense behaviors committed by these prisoners are so inherently serious that a parole would not be justified at any point in the guideline range unless the Commission could articulate a clearly significant circumstance in mitigation.

59 Fed.Reg. 25813 (May 18, 1994).  In other words, the USPC was afraid that if the old version were not changed, prisoners like Mr. Furnari would more likely be paroled.  Significantly, the

USPC did not state, in publishing this rule, that it merely codified existing practice. This demonstrates that in the minds of the USPC the change created a "substantial risk of prolonged incarceration." <u>Garner</u>, 529 U.S. at 251. Indeed, that was precisely the intent. As a result, the change cannot be applied retroactively to sentences for pre-1994 offenses without violating the Ex Post Facto Clause. Mr. Furnari is therefore entitled to habeas corpus relief on this ground as well.

     C.   The Parole Commission's Decision Rests on Evidence Lacking Sufficient Indicia of Reliability to Satisfy Due Process or the Governing Statutory Criteria, as Authoritatively Interpreted in the USPC's Own Rules, <u>and Without a Basis in Fact.</u>

The USPC violated Due Process Clause of the Fifth Amendment by basing its 2001 <u>de novo</u> decision on unreliable evidence. For the same reason, this decision also violated the governing statute, 18 U.S.C. § 4207 (former provision), as implemented by 28 C.F.R. §§ 2.19 and 2.20. These controlling authorities are authoritatively interpreted and implemented in the USPC Rules & Procedures Manual ("RPM") ¶ 2.20-04, which sets forth standards and criteria for judging the reliability of non-conviction information. The writ should be granted on this basis as well.

A parole decision must have a rational basis in fact, and the evidence relied on by the USPC to determine those facts must be reliable. <u>Gambino v. Morris</u>, 134 F.3d 156, 164 (3d Cir. 1998); <u>Zannino v. Arnold</u>, 531 F.2d 687, 691 (3d Cir. 1976). Regardless of any prior appeal or remand, the USPC's basic findings on which the denial of parole was predicated in 2001 were factually erroneous and its sources were unreliable.

### 1.  Lack of Factual Basis.

The Parole Commission may not base a decision "on an inaccurate factual predicate."  <u>Furnari v. Warden</u>, 218 F.3d at 254 (citing <u>Campbell v. United States Parole Commission</u>, 704 F.2d 106, 109 (3d Cir. 1983)).  Yet the USPC decision in 2001 in this case rests on just such bases.  To begin with, the USPC mistakenly stated, "Your offense behavior ... involved murder and conspiracy to murder and multiple separate acts of extortion through racketeering offenses."  Exh. K.  While petitioner's current offense behavior did involve "multiple separate acts of extortion through racketeering offenses," his "offense behavior" did <u>not</u> involve "murder [or] conspiracy to murder."  Mr. Furnari was simply not convicted of participating in any such offense, and the USPC's assertion to the contrary therefore lacks any factual basis.  Participation in an offense involving multiple acts of Hobbs Act extortion and Taft-Hartley violations alone, for which he was convicted in this case, even if committed as part of a RICO organized crime conspiracy, could not conceivably have resulted in denial of parole for 15 (or 30, if the latest set-off stands) years.

In addition, the USPC concluded that Mr. Furnari was responsible for the Schliefer, DeCicco, and Taglianetti murders because he was "the leader of a crew in the Lucchese crime family when the crimes were committed."  According to AUSA Kelley, however, Schliefer was murdered in February 1975, DeCicco in April 1986, and Taglianetti in 1992.  Exh. D, at 2-3; Exh. E, at 2.  Casso reported that Mr. Furnari was indeed a capo

(that is, "the leader of a crew") when Schleifer was murdered.
See AUSA Kelley's letter dated August 1, 1996, to the USPC; Exh.
D, ¶1, at 2.  But AUSA Kelley's own submission was to the
contrary, reporting that Mr. Furnari did not become a capo until
the "late seventies," Exh. C, at 1 (Kelley letter of 12/4/95),
long after Schleifer's murder.  Moreover, according to AUSA
Kelley, Mr. Furnari was a capo only until 1983 -- before the
DeCicco and Taglianetti murders.  Exh. E, at 2 (Kelley letter
dated 12/11/96).[11]  There is simply no factual basis for the
Commission's stated justification for believing Casso's claim
that Mr. Furnari was responsible for these murders.

The National Appeals Board also referred to "the attempt to
murder Abinanti."  This attempted murder occurred on September
1, 1979.  Exh. E, at 2.  Joseph Abinanti in fact was never
murdered; according to Casso, the contract to murder him was
recalled.  Given Casso's unreliability, as discussed under Point
C.2. below, the USPC should not have credited Casso's claim that
there was ever a contract to murder Abinanti.  However, even if
this is the only murder or attempted murder that stands up as
committed during Mr. Furnari's alleged tenure as a Lucchese
Family capo, then the decision cannot be upheld.  The fact that
the murder was never accomplished (and in fact the contract was
recalled) might have led the USPC to grant parole despite this

---

[11] After that, he was allegedly the "consigliere."  Nothing
in the record before the USPC would support a conclusion
that the consigliere is either "the leader of a crew" or is
otherwise in the chain of LCN authority that would make him
inherently responsible for a murder committed by members of
a "crew."

one, 22-year-old incident, which was not part of any offense of conviction.

Nor is there any basis in fact or logic for the USPC's saying that it is an "aggravating factor" of petitioner's current offense (the RICO extortion conspiracy) that he allegedly was "involved in the hierarchy, first as a Capo and later as a Consigliere[,] of a major organized crime organization."[12]  That is the essence of the RICO offense, not an "aggravating factor."  Likewise, there is no basis in fact for the USPC to say it is an aggravating factor in this case that Mr. Furnari was "involved either directly [or indirectly] in the planning or approval of murder and/or attempted murder."  Prior alleged non-conviction conduct which is not an aspect or characteristic of the "present offense behavior" (here, sitting "from time to time" on the LCN Commission and participating in labor extortions), cannot be called "an aggravating factor" of the present case.

For these reasons, the respondent's de novo decision lacks a rational factual basis, requiring that habeas corpus relief be granted.

**2.   Unreliability of Sources.**

The Constitution and statute require not only a factual basis but also reliable evidence.  Gambino v. Morris, 134 F.3d at 164.  The Parole Commission's own rules attempt to implement

---

[12] As the USPC put it, "[A] decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggra-

-24-

the statutory standard fairly.  Yet those rules were not followed here.  It cannot rationally be said that "the allegation [by Casso of petitioner's involvement in murders] is corroborated by established facts" or that "the source of the allegation appears credible."  RPM ¶ 2.20-04.  The USPC's decision in this case further flatly violates the standard of the USPC's own RPM, which states that "An allegation that is ... unsupported, or comes from an unreliable source should not be considered."  Id.  The inherent unreliability of information relied on by the Sentencing Commission is easily demonstrated by reference to the entire discussion of factual basis in the preceding sections of the Memorandum.

For these additional reasons, the decision to deny petitioner Furnari parole for another 15 years violated his constitutional and statutory rights, entitling him to release on a writ of habeas corpus.

      D.   The Parole Commission's Reliance on Conduct Other than the Offenses of Conviction to Set Petitioner Furnari's Offense Severity Category Violates the Commission's Own Rules as well as Due Process.

Even assuming that there is sufficient credible evidence to demonstrate by a preponderance standard that Christopher Furnari is responsible for one or more "historical" murders, the Parole Commission violated the governing statute as well as its own

_____(footnote continued)

vating factors:  You were involved in the hierarchy, first as a Capo and later as a Consigliere[,] of a major organized crime organization and were involved either directly [sic] in the planning or approval of murder and/or attempted murder."

-25-

regulations when it used that information to assign Mr. Furnari an offense severity of Category Eight. For this reason as well, this Court should issue the writ, order the Parole Commission to place Mr. Furnari on parole for the balance of his sentence, and direct the Warden to release him from physical confinement.

Title 18 U.S.C. § 4206(a) (1976) requires the Parole Commission to consider the "nature and circumstances of the offense" when it considers an inmate for parole. The Commission's guidelines, established by formal regulation, implement this statutory mandate by assigning each type of federal offense to one of eight categories -- with Category Eight being the most serious and Category One the least. 28 C.F.R. § 2.20. Interpreting the statutory phrase "of the offense" to refer to the prisoner's current offense of conviction is certainly the most natural, if not the only plausible reading of the statute, given Congress's use of the definite article "the." Notwithstanding its action in Mr. Furnari's case, that is the Parole Commission's own official interpretation as well.

The U.S. Parole Commission Rules and Procedures Manual provides that in determining offense severity, the Commission is to look to "present offense behavior." USPC Manual ("RPM") § 2.20-04, at 94-95.[13] The Commission is to "Select the offense rating appropriate to the actual offense behavior that occurred." Id. In this case, Mr. Furnari's "present offense behavior" is his participation in conducting the affairs of the

---

[13] Available at
www.usdoj.gov/uspc/readingroom/ProcedureManual.

-26-

RICO "enterprise" known as "the Commission" and its 1980-85
labor racketeering activities.  There is no evidence that the
murders and attempted murder cited by the Parole Commission were
ordered or sanctioned by "the Commission" during Mr. Furnari's
membership.  To the contrary, the Parole Commission properly
concluded, based on information from AUSA Kelley, that the
Schliefer, DeCicco, and Taglianetti murders and other acts
showed "that <u>Lucchese family crews</u>, including yours, employed
violence to promote the goals of the criminal organization,"
Exh. L, at 3, that is, "to advance the interest of or to protect
<u>the Lucchese crime family</u>."  <u>Id.</u> at 2.  As the indictment and
PSI emphasized, the "Commission" and the "Lucchese Family" were
two different enterprises, and the activities of one were not
the activities of the other.  Mr. Furnari was thus denied parole
by reference to circumstances other than his "present offense
behavior," contrary to the governing statute and regulation.

    To the extent it is at all unclear whether the term
"offense," as used in the statute and regulation, refers solely
to the offense of conviction, to offenses related to the offense
of conviction also, or even to other, separate offenses for
which the defendant might be held accountable, that ambiguity
must be resolved in accordance with the USPC's own Manual.  In
determining the meaning of the term "offense conduct" in the
governing regulation, this Court must defer to the handbook
which governs how the USPC is to ascertain a prisoner's offense
severity.  See <u>Christensen v. Harris County</u>, 529 U.S. 576, 588
(2000) (deference to an agency's interpretation of its own

formal guidelines is "warranted only when the language of the
regulation is ambiguous"); <u>Auer v. Robbins</u>, 519 U.S. 452, 461
(1997) (same); <u>Bowles v. Seminole Rock and Sand Co.</u>, 325 U.S.
410, 413 (1994) (same).[14]  To the extent that there is any
ambiguity in the statute, reference the USPC's official manual
thus supports petitioner's Furnari's claim.

The facts in the record would, at most, support a finding
that Mr. Furnari's "offense," 18 U.S.C. § 4206(a), that is, his
"offense conduct," 28 C.F.R. § 2.20, consisting of his "present
offense behavior," RPM 2.20-04, would warrant rating his offense
severity as Category Seven.[15]  The parole decision in this case

---

[14] This deference may be greater than that given an agency's
informal policies and handbooks when they interpret and
implement an ambiguous provision of the governing statute,
where there is no formal agency regulation.  See, <u>e.g.</u>, <u>Reno
v. Koray</u>, 515 U.S. 50, 60-61 (1995) (some deference given to
Bureau of Prisons "program statement"); compare also <u>Lopez
v. Davis</u>, 531 U.S. 230 (2001) (deference owing to formal BoP
regulation explaining how it implements statutory grant of
discretion, and to which it adhered in case at hand); <u>Stiver
v. Meko</u>, 130 F.3d 574 (3d Cir. 1997) (upholding formal BoP
regulation, interpreting statute which was ambiguous whether
it referred only to prisoner's current offense or also to
prior convictions, as underlying basis for exercise of
Bureau's statutory discretion to grant or withhold sentence
reduction for participation in drug program).

[15] RICO offenses are rated under the Parole Commission's
guidelines at no less that Category Five.  28 C.F.R. § 2.20,
Offense Severity Index § 1101 ("Grade according to the
underlying offense attempted, but not less than Category
Five").  Since the underlying offense in this case is extor-
tion, Offense Severity Index § 322 (extortion) would
normally apply.  That section rates extortion crimes as
Category Five, unless the offense did not involve threat of
physical injury to person or property or extortionate exten-
sion of credit, or if it did not involve the use of an
official governmental position.  In those cases, the regula-
tions requires that Chapter Eleven, Subchapter F be applied.
Chapter Eleven, Subchapter F, in turn refers to the fraud

-28-

was directly contrary to the statute, due process, and USPC's own basic rules.  Ordinarily, this Court would therefore direct the Parole Commission to rate Mr. Furnari's offense as a Category Seven or Five.[16]  See <u>United States ex rel. Farese v. Luther</u>, 953 F.3d 49 (3d Cir. 1992) (Parole Commission calculated offense severity using method contrary to its regulations; on remand, Commission must reduce severity rating since no facts in record would support higher rating).  Under the circumstances of this case, however, as discussed under Point A.2., the Court should simply issue its writ of habeas corpus, requiring petitioner Furnari's immediate release on parole.

### III.  <u>CONCLUSION</u>

The Parole Commission has failed to give acceptable reasons for crediting information provided by a mob informant whom the government concedes is a liar, notwithstanding a prior remand from the Court of Appeals.  The USPC also violated the Ex Post

_____(footnote continued)

guidelines.  Chapter Three, Subchapter D (theft and related offenses) rates offenses involving more than $5 million as Category Seven (§ 331(a)).  Offenses involving between $1 million and $5 million are rated Category Six.  These calculations are ultimately moot in this case, however, as none of them results in a presumptive term to serve before parole nearly as great as the ten years Mr. Furnari had to serve under his sentence, much less the 15+ years he has now actually served, as explained in the following footnote.

[16] Defendants whose offense severity is rated as Category Seven and whose salient factor score is 8-10 (Mr. Furnari's salient factor score is 8), the guideline range is normally 52-80 months.  The guideline range for Category 5 is 23-36 months.  28 C.F.R. § 2.20 (Guidelines for Decisionmaking).  In this case, Mr. Furnari must serve at least ten years (120 months), since he was sentenced to 100 years' imprisonment.

Facto Clause, acted without a basis in fact and on unreliable evidence, and violated its own regulations when if assigned the petitioner to Offense Category Eight and denied him parole release for at least another 15 years.  The Court should therefore issue the writ of habeas corpus, ordering the respondent Parole Commission to place petitioner on parole for the balance of his sentence, and the respondent Warden to release him from physical confinement, and should grant such other or further relief under 28 U.S.C. § 2243 as law and justice require.

Respectfully submitted,

Dated:   April 19, 2002

PETER GOLDBERGER
JAMES H. FELDMAN, JR.
50 Rittenhouse Place
Ardmore, PA  19003

(610) 649-8200

Attorneys for the Petitioner

## CERTIFICATE OF SERVICE

On April 23, 2002, I served a copy of the foregoing Memorandum of Law on the attorney for the respondents, by overnight delivery, postage prepaid, addressed to:

Kate Mershimer, Esq.
Assistant U.S. Attorney
Federal Building, suite 1162
228 Walnut Street
Harrisburg, PA  17108-1754

_____(footnote continued)

Exh. B; see 18 U.S.C. § 4205(a).  To date, he has served over 15 years.