**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

CHRISTOPHER FURNARI,                    :

        Petitioner,           :          **CIVIL ACTION**
                                                    **NO. 4:02-CV-555**
   v.                                  :
                                                    (Judge McClure)
UNITED STATES PAROLE COMMISSION :
and WARDEN, Federal Correctional
Institution - Allenwood, Pa.,          :

        Respondents.          :

FILED
WILLIAMSPORT, PA

JUL - 2 2002

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

PETITIONER'S REPLY MEMORANDUM
IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Christopher Furnari, is serving a 10-to-100 year "Regular Adult" ("old law") sentence at FCI Allenwood. The sentence was imposed in the Southern District of New York in 1987 on RICO charges arising out of a labor racketeering indictment against member of "The Commission" of La Cosa Nostra. Mr. Furnari became eligible for parole in late 1996. He has petitioned this Court pursuant to 28 U.S.C. § 2241 for a Writ of Habeas Corpus, challenging the decision of the respondent United States Parole Commission to deny him release. The respondent's memorandum in response to the petition, while very lengthy, fails to refute Mr. Furnari's arguments. In most respects, it

-1-

either misapprehends or misrepresents the positions taken by Mr. Furnari, adopting a "straw man" argument strategy. The writ should issue.

**1.  The Latest Denial Violated the Law of the Case.**

Petitioner Furnari's opening memorandum shows how the USPC disregarded the rationale of the Third Circuit's decision in Furnari v. Warden, 218 F.3d 250 (3d Cir. 2000), in two respects. First, the Court held that the USPC's denial of parole to Mr. Furnari relied so heavily on the testimony of Anthony Casso that these reasons could "no longer suffice" after Casso was discovered by the U.S. Attorney's Office in the Eastern District of New York to be a liar. Id. at 257. Yet the USPC simply reiterated those same reasons for purporting to credit Casso at the de novo hearing held in response to this Court's order on remand, as thoroughly demonstrated in Mr. Furnari's opening memorandum. Pet. Mem. 12-14.

Second, the Third Circuit noted the most troubling aspect of Mr. Casso's newly discovered unreliability was that he had "lied in another case." 218 F.3d at 252. Yet the USPC, on appeal from the de novo hearing, claimed it thought it could fairly continue to use Casso's information as the basis for its action against Mr. Furnari because Casso had told the truth about others while lying about his own recent activities. This explanation was directly contrary to the Stamboulidis affidavit, to which the Court of Appeals referred. See Pet. Mem. 14-15. The present Response completely ignores this fundamental problem

-2-

with the USPC's latest reasoning, which reveals its disregard of the binding Third Circuit decision.

In the first of many instances of their "straw man" strategy, the respondents conclude that "it is simply untrue that the 'law of the case' is that none of the information previously considered may now be considered by the Parole Commission." Resp. Mem. 17. Be that as it may, Furnari has argued no such thing in support of his present petition. He has not contended that "none of the information" could "be considered," because that is not what the Third Circuit ruled. The Court of Appeals' ruling is fully explained and clearly set forth in petitioner's memorandum -- it is that the prior statement of reasons can "no longer suffice" in the face of the Stamboulidis affidavit.[1] What the court of appeals had found inadequate was the USPC's statement, explaining its refusal on interim review to change the prior denial, that "the evidence you have presented [_i.e._, the Stamboulidis affidavit] does not persuade the Commission that the information it has relied upon is inaccurate." 218 F.3d at 256. The respondents would apparently have this Court believe that it was the conclusory formulation of this "reason" that did not "suffice," rather than

---

[1] The Third Circuit's full statement was: "[W]hen new information is significant enough to seriously undermine the basis for the initial determination, the Parole Commission must provide a proper statement of reasons when it denies parole following an interim hearing. It cannot continue to rely on the statement of reasons from the initial determination, which no longer can suffice." 218 F.3d at 257.

its substance.  Petitioner, on the other hand, suggests that
Judge Becker's opinion is not so shallow as that.

Petitioner Furnari respectfully submits that the ruling of
the Third Circuit in the prior appeal would have been the same
if the USPC, instead of issuing the conclusory "we are not
persuaded" decision, had instead re-issued a duplicate of its
prior statement of reasons with a new date on it.  In effect,
that is what it did after the "de novo" review.  In all respects
but one, the USPC gave the same reasons for crediting Casso in
April 2001 as it had given in August 1997.  <u>Compare</u> Pet. Exh. L
<u>with</u> Pet. Exh. G.  And that last reason -- the purported
distinction between Casso's lying about himself and lying about
others -- is contradicted by the record,[2] as accurately noted in
the Third Circuit's own decision.  218 F.3d at 252 (Stamboulidis
affidavit revealed, <u>inter alia</u>, that Casso had "lied in another
case").  For these reasons, the Response completely fails to
refute petitioner Furnari's first ground for relief.  Thus, as
shown in Mr. Furnari's opening memorandum, the latest USPC
decision fails to comply with this Court's order implementing
the mandate of the Third Circuit in the prior appeal and
violates the law of the case.

**2.  The USPC Decision Violates the Ex Post Facto Clause.**

The law governing the Ex Post Facto issue in this case --
as is true of any issue in any case in this Court -- is found in

---

[2] <u>See</u> Pet. Mem. 14-15, <u>discussing</u> Pet. Exh. H (¶ 35, at 17;
¶ 39, at 19).

the most recent decisions on the subject from the Supreme Court
of the United States and from the United States Court of Appeals
for the Third Circuit.  Ordinarily, it might not be necessary to
begin by mentioning that elementary proposition in a brief, yet
the Response filed by the USPC and Warden seems to be unaware of
it.  Resp. at 24-34.  The Third Circuit in U.S. ex rel. Forman
v. McCall, 709 F.2d 852 (3d Cir. 1983), held that the Parole
Commission's regulatory "guidelines" are subject to Ex Post
Facto constraint, if they are rigidly followed.  It rejected the
proposition that regulations, as opposed to statutes, cannot be
"laws" within the meaning of the Ex Post Facto Clause.  The
Supreme Court of the United States reached a virtually indistin-
guishable conclusion 17 years later, that is, just two years
ago, in Garner v. Jones, 529 U.S. 244 (2000).  The Supreme Court
there reversed a ruling that a change in a Georgia parole
regulation (not a statute) governing the frequency of hearings
for parolable "lifers" automatically violated Ex Post Facto.
After Garner, the Third Circuit has reaffirmed its Forman
position.  See Coady v. Vaughn, 251 F.3d 480, 487-88 (3d Cir.
2001).  The Response completely fails to acknowledge or even
cite this controlling authority.  As a result, the respondents'
Ex Post Facto analysis is completely off the mark.

    The applicable test is not, as respondents would have it,
whether Mr. Furnari can "demonstrate that his incarceration has
necessarily increased as a result of the murder rule ...."
Resp. 33.  Rather, the Garner Court remanded for further
proceedings, including the option of taking discovery, on the

question whether the parole board's regulatory change "created a
significant risk of increased punishment for respondent" Jones.
529 U.S. at 255.   The Response in the present case echoes the
position taken by Justice Scalia in Garner in a separate opinion
joined by not a single additional Justice.   See id. at 257-59.
The USPC's extended discussion of earlier and out-of-circuit
case law is, at best, irrelevant to the proper disposition of
the present case.

Mr. Furnari's discussion of the 1994 amendment to the Note
to 28 U.S.C. § 2.20 regarding Category Eight cases shows how the
change from open-ended discretion to presumptive denial in all
but the most extraordinary of cases in the offense category into
which the USPC has placed him[3] plainly meets the Garner v. Jones
test.   The USPC does not offer to show, from its own database,
that it has granted paroles in Category Eight "note" cases (that
is, supposedly aggravated murder cases) since 1994 with any
statistically significant frequency, nor has it offered to
compare its post-1994 practice in these cases with pre-1994
statistics.[4]   Mr. Furnari doubts very much that deviations from
the amended "guideline" have occurred, but is willing to look at

---

[3] Of course, as discussed under Point D of Petitioner's
opening Memorandum and Point 4 of this Reply, Mr. Furnari
does not properly fall into that Category in any event.

[4] Contrary to respondents' assertion that question whether
the Ex Post Facto Clause applies is to be determined by some
nebulous examination of the operation of the USPC's guide-
line system as a whole, Resp. 27-28 & n.17, the Supreme
Court in Garner required an examination of the impact on
that prisoner of the particular regulatory change that was
challenged.

any data the USPC is willing to share.[5]  As in <u>Garner</u>, contrary to the USPC's argument, Mr. Furnari's <u>ex post facto</u> claim is not based on a mere change in the manner in which pre-existing discretion is exercised, but on a new rule which directs presumptive denial of parole categorically.

For these reasons, the Response fails to undercut Mr. Furnari's <u>ex post facto</u> challenge to the USPC's reliance on the 1994 change in the Note to § 2.20 in its latest denial of his application for release on parole.

**3.   The Decision Is Unreliable and Lacking in Factual Basis.**

Petitioner's memorandum details the particular reasons given by the USPC in its denial order and shows that to lack a factual basis.  Mr. Furnari cites Third Circuit case law estab-lishing that such decisions violate due process and the gover-ning statute and regulations.  Pet. Mem. 21-25.  The respondents thus attack another straw man when they argue that the USPC's Rules and Procedures Manual creates no enforceable rights. Resp. 34-35.  Anticipating and accepting that proposition, Mr. Furnari has only utilized the Manual as a guide to understanding the regulations, for which it is a proper reference.  The respondents answer to the merits of this argument, so far as Mr. Furnari can tell, are found not under Point III of the Response but under their Points I.B-C (at 17-23).  There, respondents

---

[5] It seems obvious, however, that the Court cannot decide the Ex Post Facto issue in reliance on case law that is nearly 20 years old, discussing statistics about Parole Commission practice that are undoubtedly no longer valid.  <u>Compare</u> Resp. 27 (citing <u>Forman</u>).

suggest that the USPC decision is adequately supported by information from the liar Casso, as corroborated by another informant named Carew.  But petitioner's opening memorandum shows how this testimony is contradicted, in terms of the most crucial detail -- the dates -- by the letters from AUSA Kelley.  The Response simply ignores this devastating hole in the USPC's reasoning, because there is no answer to it.

As the Third Circuit's prior decision in this very case makes abundantly clear, a "reason," as required by law in this context, means more than a formulaic recitation or arbitrary declaration of belief in one witness rather than another. Rather, it means an explanation with evidentiary support which stands up to logical scrutiny.  The 2001 denial of parole to Mr. Furnari fails that test, as already fully shown.

The balance of the respondents' argument on this point is really directed at what Mr. Furnari says under his Point IV, and so he will respond there.  In short, the denial of parole must be overturned for lack of a sound a basis.

## 4. Misidentification of the "Offense Behavior" Violates the Statute and Regulation, as well as Due Process.

The respondents' most egregious misrepresentation (or misunderstanding) of Mr. Furnari's claims, as presented in his petition and supporting brief, relates to our fourth argument. We argue, with care, that the USPC failed to apply its own regulation (and thus violated not only the regulation but also the statute and due process) when it rated him on the Offense Behavior scale of 28 C.F.R. § 2.20 (the "parole guidelines") on

-8-

a starting basis other than his offense of conviction.   Never in his papers did Mr. Furnari advance any of the patently erroneous contentions which the respondents attribute to him and then proceed to "refute."[6]   Petitioner demonstrates that the USPC violated 18 U.S.C. § 4206(a) and 28 C.F.R. § 2.20, the statute and implementing regulation requiring the parole decision to be based first on consideration of "the offense," which clearly means "the offense of conviction," not the prisoner's "alleged past history of uncharged criminal conduct"; he does not assert a violation of § 4207, which governs the information that the USPC may consider, as respondents would have it.

Petitioner does not argue anywhere in his memorandum that the USPC could not have taken any account at all of an allegation (assuming it had reliable evidence to support the charge) that a prisoner had committed unrelated but serious crimes, other than the offense of conviction, years before the instant offense, for which he had never been prosecuted.   No doubt such allegations, if satisfactorily established, might in some cases be pertinent in some way to a parole decision.[7]   But the USPC did not use the murder allegations in this case in any such way. Rather, in placing Mr. Furnari on its guidelines, the USPC has

---

[6] Among these are:  (1) "that the word 'offense' in the statute ... must be read ... to preclude the USPC from considering criminal behavior for which he was not convicted," Resp. 36; and (2) that the USPC is "limited to the offense of conviction in making parole decisions," id.; etc.

[7] See, e.g., 18 U.S.C. § 4206(a) (calling for consideration of "the history and characteristics of the prisoner").

repeatedly <u>substituted</u> such allegations for an accurate description of "the offense" Mr. Furnari is imprisoned for committing. That, the case law (enforcing the regulation, the statute, and the due process clause alike) simply forbids.

Not one of the cases string-cited by the respondents (Resp. 37-38) is to the contrary, nor are those cases even on point. To start with the Third Circuit precedent cited by respondents, <u>U.S. ex rel. Goldberg v. Warden</u>, 622 F.2d 60 (3d Cir. 1980), held that the USPC could utilize the PSI (particularly, statements which had been accepted without objection by the defendant at sentencing) to learn "the nature and circumstances of the offense."  18 U.S.C. § 4206(a).  The USPC could then take those "circumstances" of the offense of conviction into account in setting the Offense Severity under the parole guidelines, even if that same information had underlain counts of the indictment which were dismissed "with prejudice" in a plea agreement.  The questioned non-conviction conduct in <u>Goldberg</u> was thus like what is called "relevant conduct" under the present Sentencing Guidelines.  Petitioner does not question that a prisoner's "offense behavior," as that phrase is used in the USPC's regulation to implement § 4206(a)'s "nature and circumstances" language, may include facts about the offense of conviction that are not elements of the particular counts on which the prisoner was sentenced.  But that has nothing to do with the present case, in which "the offense" itself was misidentified.

Similarly, <u>Arias v. U.S. Parole Comm'n</u>, 648 F.2d 196 (3d Cir. 1981), followed <u>Goldberg</u> in holding that the USPC could

rate the severity of a drug offense on the basis of the entire quantity involved in the current "offense behavior," as deter-mined by reference to the PSI, even though the plea was limited to a particular transaction and the larger quantities had been charged as offenses contained in a separate indictment which was dismissed under the plea agreement.  Again, it was the total "nature and circumstances" of the present offense conduct, not the defendant's unrelated and uncharged alleged past crimin-ality, that was at issue.[8]

The only case cited by respondents which they even claim is on point, <u>Hackett v. U.S. Parole Comm'n</u>, 851 F.2d 127 (8th Cir. 1987) (per curiam), turns out upon examination not to be any better authority for them.[9]  In <u>Hackett</u>, the defendant was convicted of kidnapping for ransom (not of "bank extortion," as respondents assert), <u>id.</u> at 128, and was therefore properly rated by the USPC in Category 8.  <u>Id.</u> at 129 & n.2.  He objected that in setting his parole date within Category 8's open-ended range the USPC erred in considering the assertion in the Victim

---

[8] It might be noted that in <u>Arias</u> the USPC utilized the pattern of the prisoner's past criminal conduct to justify a decision above the guidelines, overriding the Salient Factor Score, not to adjust the Offense Severity.  <u>See</u> 648 F.2d at 198 n.2 & 200-01.  The USPC has never proceeded on any such basis in Mr. Furnari's case.

[9] Respondents contend that in <u>Hackett</u> the Sixth Circuit held that the "USPC can rate offense severity as rape, based on statement of victim contained in PSI that she had been raped, even though petitioner was only convicted of bank extortion ...." Resp. 37.  If that were so, the case might be more on point than the others cited.  But as elaborated in the text above, that parenthetical description of the case turns out to be grossly inaccurate.

Impact Statement that the kidnap victim had been raped.  Thus, in that case the challenged non-conviction information did not even result in a change in the Offense Severity category.  Once the court satisfied itself that the USPC had a reliable basis to credit the victim's version, Hackett's claim patently had no merit.  In any event, the case has no bearing on Mr. Furnari's claim that the USPC set the Offense Severity rating under the guidelines for him on a basis entirely separate from and unrelated to "the offense" for which he was convicted.[10]

In fact, what is most telling about the respondents' brief on this issue is that with all the resources and archives at the USPC's disposal, it has been unable to cite a single case in which past, unadjudicated accusations were utilized (much less approved by a court decision) to set a prisoner's Offense Category under the Parole Guidelines.  This itself lends strong

_____

[10] The remaining cases cited by respondents in support of their position are even less pertinent than those discussed in text above.  See Tobon v. Martin, 809 F.2d 1544 (11th Cir. 1987) (per curiam) (no error by USPC in basing decision outside its guidelines on dealer's possession of exceptionally large quantity of drugs and also on presence of several weapons, including assault rifle, in home at time of arrest); Bowen v. U.S. Parole Comm'n, 805 F.2d 885 (9th Cir. 1986) (mis-cited by respondents as "Bower," Resp. 38) (in rating severity of criminal conduct constituting violation of parole, USPC could consider that bodily injury was inflicted in course of robberies for which parolee was convicted in state court, even though separate assault counts were dismissed); Melvin v. Petrosky, 720 F.2d 9 (8th Cir. 1983) (USPC could properly rate offense on basis of entire scope of thefts committed in furtherance of conspiracy, without limitation to particular thefts charged against petitioner in indictment).  All of these are "nature and circumstances" cases; none involved the USPC's reliance on alleged prior misconduct unrelated to the offense of conviction to rank the Offense Severity.

support to petitioner's argument that "the offense" under the statute, as implemented by the "offense behavior" concept under the USPC's own regulations, 28 C.F.R. § 2.20(d),[11] means the offense of conviction, albeit including the full "nature and circumstances" of that offense.  It does not mean, and cannot mean, anything else, such as accusations of past, uncharged criminality.

Just as the respondents attempt to answer a different contention from that which petitioner actually makes about the misclassification of his "offense behavior," so they misstate the legal basis of this claim.  Nowhere in his papers does Mr. Furnari assert a right to enforcement of the Rules and Procedures Manual, as such.  <u>Compare</u> Resp. 36 (referring to Mr. "Furnari's argument that ... the phrase 'offense behavior' in the USPC Procedures Manual must be read ....").  He invokes the Manual <u>only</u> as a useful guide to correct construction of the regulation (which refers to "offense behaviors"),[12] which in turn is entitled to deference as a construction of the statute, 18 U.S.C. § 4206(a) (requiring that the USPC begin its analysis

_____

[11] In petitioner's opening memorandum, on page 27, we refer mistakenly at one point to "the term 'offense conduct' in the governing regulation."  In fact, the regulatory term is "offense behavior."

[12] There is another slight editorial error in petitioner's opening memorandum where, on page 28, just after footnote 14, we have "any ambiguity in the statute," where "any ambiguity in the regulation" was intended.  <u>Compare</u> Resp. 38 (attempting to exploit this minor mistake).

with "the offense").[13]  After all, Mr. Furnari *is* entitled to

insist that the USPC's Guidelines be followed, and thus that

they be properly construed when applied to him.  See <u>U.S. ex

rel. Farese v. Luther</u>, 953 F.3d 49 (3d Cir. 1992); <u>Marshall v.

Lansing</u>, 839 F.3d 933 (3d Cir. 1988).

The Manual uses the phrase "present offense behavior" to

explain this statutory and regulatory concept.  Thus, even if

the statute's "the offense" or the regulation's "offense behav-

iors" were ambiguous to the extent that it might mistakenly be

taken to allow USPC reliance on past, alleged criminality to

calculate the current Offense Severity under the guidelines, as

it was implemented in Mr. Furnari's case, the Rules and Proce-

dures Manual (which refers to the prisoner's "present offense

behavior") may properly be consulted to resolve the ambiguity

and disallow the improper construction and application of the

concept which occurred in this case.

For these reasons, elaborating those presented in Mr.

Furnari's opening memorandum, the writ must be granted.

---

[13] In <u>Melvin v. Petrosky</u>, cited by the respondents as
supporting authority (Resp. 38), the Eighth Circuit relied
on the Rules and Procedures Manual to hold that the USPC did
not "substantially comply with its own regulations. ... This
includes nondiscriminatory application of those regula-
tions."  720 F.2d at 12.  On the basis of the USPC's failure
to apply its "offense classification regulation" consis-
tently in that case, even if the inconsistency was uninten-
tional, the court of appeals remanded with instructions to
grant immediate reconsideration.

**5.    The Remedy Should Be Release, Not Another Rehearing.**

Relying on <u>Marshall v. Lansing</u>, 839 F.3d 933, a case very much on point, petitioner has explained why, if he is right about his parole denial having been unlawful in any of several ways, the proper remedy at this time would be an order that he be released on parole, not a "remand"[14] for yet another parole hearing.  Pet. Mem. 15-16.  Respondents do not dispute that argument anywhere in their lengthy Response memorandum.  Petitioner Furnari thus takes the point as undisputed.  If he prevails on the merits, the appropriate relief, in the exercise of this Court's discretion under 28 U.S.C. § 2243, is an order granting a writ of habeas corpus releasing him from respondents' custody and placing him on parole.

Conclusion

The Response fails to undermine any of petitioner's claims. For all the foregoing reasons, elaborating and supplementing those presented in petitioner Christopher Furnari's opening memorandum, he is entitled to the issuance of a writ of a writ

---

[14] A case like this one cannot literally be "remanded" to the USPC, as it does not come to this Court from the agency on appeal or petition for review.  What is sometimes called a "remand" is really a conditional writ of habeas corpus.

-15-

of habeas corpus releasing him from respondents' custody and placing him on parole for the balance of his sentence.

Respectfully submitted,

Dated: July 1, 2002

By: PETER GOLDBERGER
50 Rittenhouse Place
Ardmore, PA  19003

(610) 649-8200

Attorney for the Petitioner

CERTIFICATE OF SERVICE

On July 1, 2002, I served a copy of the foregoing Reply on the attorney for the respondents, by first class mail, postage prepaid, addressed to:

Kate Mershimer, Esq.
Assistant U.S. Attorney
Federal Building, suite 1162
228 Walnut Street
Harrisburg, PA  17108-1754