

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER FURNARI,               :
                                   :
          Petitioner               :    CIVIL NO. 4:02-CV-0555
                                   :
     vs.                           :    (Petition Filed 04/04/02)
                                   :
UNITED STATES PAROLE COMMISSION,   :    (Judge Muir)
                                   :
          Respondents              :

FILED
WILLIAMSPORT PA

JUL 1 8 2002

MARY E. D'ANDREA, CLERK
Per _____
              Deputy Clerk

ORDER

July 18, 2002

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Petitioner Christopher Furnari initiated this action by filing through his counsel a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The claims in Furnari's current petition are inherently related, although not identical, to those which he had previously presented in a § 2241 petition which we denied in an order dated April 12, 1999.

Furnari appealed that order and, as a result of actions undertaken before the Parole Commission while Furnari's initial § 2241 was pending before us and of which we were not aware[1], the Court of Appeals for the Third Circuit in <u>Furnari v. Warden</u>, 218

_____

1. Those actions relate to an interim parole hearing conducted in Furnari's case on December 9, 1998. The relevance of those proceedings to Furnari's pending § 2241 petition is discussed below in detail.

F.3d 250 (3d Cir. 2000), *inter alia*, vacated our order of April 12, 1999.

We repeat and supplement in this order the background facts discussed in that opinion and our prior order of April 12, 1999, only to the extent necessary to address the four claims raised in Furnari's pending § 2241 petition. No information submitted to us in connection with Furnari's current § 2241 petition leads us to believe that the facts recounted in our order of April 12, 1999, or the Court of Appeals decision issued on July 10, 2000, and amended on July 12, 2000, are erroneous. We further note that Furnari's direct appeal of his conviction resulted in the published opinion found at <u>United States v. Salerno</u>, 868 F.2d 524 (2d Cir. 1989).

We have attempted to be as succinct as possible in our recitation of the facts. However, the factual record in this case is voluminous and the issues so factually complex that a fairly lengthy statement of the facts is necessary. We will set forth the background facts as briefly as possible before turning to the claims presented in Furnari's current § 2241 petition.

After an 11-week trial, Furnari was convicted in the United States District Court for the Southern District of New York in 1986 of 1) a substantive violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), 2) conspiracy

in violation of the Racketeer Influenced and Corrupt
Organizations Act, 18 U.S.C. § 1962(d), 3) conspiracy to commit
extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, 4) 12
counts of extortion in violation of the Hobbs Act, 18 U.S.C. §
1951, and 5) 6 counts of aiding and abetting labor bribery in
violation of the Taft-Hartley Act, 29 U.S.C. § 186(b) and 18
U.S.C. § 2.  All of those offenses stemmed from Furnari's
participation in the illegal activities of the Lucchese organized
crime family as a "capo" (a leader of a subordinate group within
one of the La Cosa Nostra families) and a "consigliere" (a
position within the hierarchy immediately below the family boss
and practically the equivalent of an underboss).  See United
States v. Salerno, 868 F.2d 524, 528, 543 (2d Cir. 1989).

Furnari was sentenced to a cumulative term of 100 years'
imprisonment.  One who received such a sentence under the prior
sentencing system (before implementation of the United States
Sentencing Guidelines) first became eligible for parole after
serving at least 10 years of the sentence.

Furnari's first parole hearing was held on December 3, 1996.
At that hearing, and at each subsequent parole hearing, the
government has taken the position that Furnari should not be
paroled because he was involved in a number of murders.  Before
Furnari's initial parole hearing, Assistant United States

3

Attorney David N. Kelley[2] had written a letter to the Parole
Commission dated August 1, 1996, in which he detailed Furnari's
involvement in various crimes committed by, or on behalf of,
Furnari, the Lucchese crime family, or a separate entity known as
"the Commission," which was apparently a dispute-resolution
entity for the five crime families active in New York City.
Kelley's letter consists of 4 and ½ single-spaced, type-written
pages with 5 footnotes.

The most serious crimes recounted in that letter, upon which
the Parole Commission apparently relied in assigning to Furnari
an offense behavior category of 8, are: 1) the murder of Lee
Schleifer in or about 1975; 2) the murder of Richard Taglianetti,
originally "contracted" in the 1980's and eventually executed in
1992; 3) the attempted murder of Joseph Abinanti in the 1970's;
and 4) the murder of Frank DeCicco in April of 1986.

The assertions in Kelley's letter about those murders and
the attempted murder were based in large part on information
Kelley had received from Anthony Casso, and to a lesser extent
upon information Kelley had received from Thomas Carew and
Alfonso D'Arco.  Each of those three men played some role in
performing crimes on behalf of the Lucchese crime family before

---

2.  Kelley was the Chief of the Organized Crime & Terrorism
Section of the United States Attorney's Office for the Southern
District of New York.

4

becoming government informants.

Ever since the government has presented and relied upon the information received from Casso in Furnari's parole proceedings, Furnari has vigorously contested Casso's credibility.  Despite Furnari's challenges to the information attributed to Casso, after Furnari's initial parole hearing, the Parole Commission assigned Furnari's offense an offense severity rating of 8, denied his application for parole, and required Furnari to serve an additional term of 15 years before being reconsidered for parole.[3]

The next significant event for the purposes of this order was an interim parole hearing held on December 9, 1998.  At that hearing Furnari submitted a 21-page affidavit prepared by George A. Stamboulidis.[4]  Stamboulidis apparently participated in the prosecution of Casso in the United States District Court for the Eastern District of New York and his affidavit (hereinafter the "Stamboulidis affidavit") had been prepared for and submitted to

---

3.  The requirement that Furnari serve 15 more years before being reconsidered for parole is especially significant in light of the fact that Furnari is 78 years old.

4.  Stamboulidis was an Assistant United States Attorney in the United States Attorneys Office for the Eastern District of New York, the Deputy Chief of the Organized Crime and Racketeering Section in that office from mid-1994 to September of 1995, and from September of 1995 to at least December of 1997 Deputy Chief of that office's Long Island Division.

the court in that case.  The Stamboulidis affidavit contains a
number of representations which cast Casso's credibility into
question, including the statement that Casso had lied to the
government in Casso's prosecution.

The Parole Commission's final decision on Furnari's interim
hearing was issued on April 2, 1999.  In that decision the Parole
Commission concluded that Furnari had not presented sufficient
information to change the Parole Commission's initial decision
regarding his parole.  Although the Parole Commission's final
decision with respect to Furnari's initial parole hearing
consisted of 4 fairly detailed paragraphs, the Parole
Commission's statement of reasons for affirming the decision of
the hearing examiner in the interim hearing consisted merely of
the following:

> In response to your claim that the decision was based on
> erroneous information, the evidence you have presented does
> not persuade the Commission that the information it has
> relied upon is inaccurate.

(Document 20, Exhibit 14)[5]

The Court of Appeals for the Third Circuit in Furnari v.

---

5.  As noted above, although the events concerning Furnari's
interim hearing occurred while Furnari's initial § 2241 petition
was pending before us, they were never brought to our attention
during our consideration of that petition.  We denied Furnari's
initial § 2241 petition by order dated April 12, 1999, after
considering the petition's merits.  Furnari's appeal of that
order prompted the opinion reported at Furnari v. Warden, 218
F.3d 250 (3d Cir. 2000).

Warden, 218 F.3d 250 (3d Cir. 2000), relied exclusively on the
sparse statement of reasons in the Parole Commission's April 2,
1999, decision in vacating our order of April 12, 1999.  In
establishing the facts upon which it relied to issue its opinion,
the Court of Appeals took judicial notice of the Stamboulidis
affidavit and the statement of reasons issued by the Parole
Commission on April 2, 1999.  With respect to the Stamboulidis
affidavit, the Court stated that

> we notice it not for the truth of the statements it
> contains, but simply for the purpose of determining that new
> information regarding Casso's credibility was presented to
> the Parole Commission at the interim hearing.

Id. at 255.

According to the Court of Appeals, the defect in the Parole
Commission's interim decision was that

> [i]n a situation such as this, where the petitioner has
> presented significant new information to the Commission, the
> Commission's failure to consider it (or to provide a new
> statement of reasons for denying parole in light of the new
> information) is thus a violation of the statute and
> regulations.

Id. at 257.  More specifically, the Court of Appeals determined
that

> [i]t is not possible to tell from this decision whether the
> Parole Commission continues to rely on Casso and find him
> credible, or has concluded that there is sufficient
> additional information tying Furnari to murder to conclude
> that he is a Category Eight even absent the information
> provided by Casso.  Yet the Appeals Board's statement of
> reasons affirming the decision at the interim hearing does
> not explain why the Board continues to categorize Furnari in

7

Offense Category Eight.

Id. at 256.

As a result of those determinations, the Court of Appeals 1) vacated our order of April 12, 1999, and 2) directed us to "enter a conditional order granting the petition and directing the Parole Commission to provide a new statement of reasons [to assign Furnari an Offense Behavior Category of 8] consistent with this opinion, ...." Id. at 258. After receiving the case pursuant to the Court of Appeals' remand, the Parole Commission conducted a *de novo* hearing in Furnari's case.

On April 24, 2001, the Parole Commission issued its final decision on Furnari's *de novo* hearing. Because our disposition of this case pivots on the sufficiency of the statement of reasons expressed in that decision, we quote it here in its entirety. The decision reads as follows:

> The Commission has reviewed your appeal and relevant documents from the case file, including the Stamboulidis affidavit, the transcript of Thomas Carew's testimony in the Pagliarulo case, AUSA Kelley's letter of September 25, 2000, and Mr. Breitbart's letter of December 6, 2000. This review does not lead the Commission to conclude that a change in the previous offense severity rating or decision is necessary or appropriate.
>
> The Stamboulidis affidavit raises doubt about the credibility of Anthony Casso, who has linked you to murders/attempted murder. The Commission has reviewed the affidavit and the other available information and concluded that Casso's information about your involvement in these crimes is accurate. The reasoning is as follows:

You were the leader of a crew in the Lucchese crime family when the crimes were committed. Casso was a member of your crew. It is unlikely that you would be unaware of any murders or plots to murder others in order to fulfill the aims of the criminal enterprise given the structure and discipline of the crime family. Even if only the "boss" of a crime family can order or approve a murder, this does not mean that crew leaders are unaware of the ordered murder, especially since crew members, based on orders presumably passed through the crew leaders, carry out the murders. In addition, there appears to be no restriction on crew leaders initiating requests for a murder. The request simply must be approved by the family boss.

In order to accept your claim that you had no knowledge of the murders/attempted murder, the Commission would have to conclude that your crew was a renegade unit which committed crimes for reasons unrelated to the enterprise. This conclusion is not warranted because the motives for the murders/attempted murder committed by your crew were related to the aims/purposes of the enterprise, for example to silence a suspected cooperating individual or punish the wrongdoing of a member or associate. Casso's information simply corroborates an inference that is reasonably made given your leadership role in the crew and Casso's membership in the crew, i.e., that you at the very least knew about, and more likely directed, the murderous activities of members of your crew. You are clearly responsible for the murders/attempted murder under a theory of vicarious criminal liability, and moreover, the information presented shows that you personally solicited or ordered some of the crimes.

AUSA Kelley's assurance in his September 25, 2000 letter as to Casso's credibility regarding your responsibility for the crimes, despite the Stamboulidis affidavit, may be reasonably credited. The AUSA checked with the U.S. Attorney's Office in the Eastern District of New York and was informed that while Casso's denials of recent allegation (sic) of crimes committed by him and attempts to impeach other witnesses' credibility were unreliable, that office believed that historical information provided by Casso on your activities was still credible. This is consistent with the Stamboulidis affidavit itself (para. 22) in which the affiant attests to the value of Casso's information on the past organized crime activities of Vincent Gigante, while at

the same time noting the unreliability of Casso's statements concerning more recent events. It is not unreasonable to find that Casso may not be worthy of belief when it came to his denials of his own recent serious crimes which could (and did) lead to his removal as a protected federal witness, and still conclude that he had given reliable information on past activities of organized crime. AUSA Kelley has corrected the record in the past when your attorney challenged the accuracy of adverse information in your presentence report. Therefore, there is no reason to suspect that the AUSA would ignore his duty to provide accurate information to the Commission or seek a parole denial in reckless disregard of the truth.

The AUSA has asserted that Casso's information is corroborated by other sources, including Tommy Carew. The excerpt of Carew's testimony in the <u>Pagliarulo</u> case does corroborate certain significant information provided by Casso, information which shows that you employed violence to advance the interests of or to protect the Lucchese crime family. For example, Carew testified that you ordered Carew and others to assault James Wolford in order to clear the way for Jimmy Bishop, a painters union official friendly to the Lucchese crime family, to exercise more control over the union. Even if the allegations of Carew and others did not result in a conviction for the assault under the reasonable doubt standard of proof, the Commission finds that the information is reliable and that, using the preponderance of the evidence standard, that it is likely you gave the order to assault Wolford.

Carew also states in his testimony that he was given the assignment of meeting Anthony Casso at a club and helping him with "something." The task turned out to be assisting Casso in the disposal of the body of a man who had been shot and killed. The circumstances described therein indicate that the body was that of Lee Schleifer. In his testimony, Carew does not identify you as being present at the club after the murder was committed and Schleifer's body was still present. As your attorney points out, this omission is inconsistent with the representation made by AUSA Kelley. However, Carew's testimony indicates that someone other than Casso gave him an assignment to help Casso. Given that you were the person who introduced Carew to the crime family and your crew, that Carew was your driver/bodyguard at the time of this crime, your leadership role in the crew, and Carew's

10

testimony about other "assignments" made by you, it is more
likely than not that you were the person who told Carew to
help Casso.

Carew also testified that you gave him the assignment of
murdering Joseph Abinanti, the son of a Lucchese member.
While this particular contract was recalled, Abinanti was
later shot and wounded, according to Casso, by Casso and Vic
Amuso at your direction.  If you issued a murder contract
for Carew to kill Abinanti, there is good reason to credit
Casso's information that you also issued such a contract to
Casso and Amuso.

Carew testified that he stored multiple handguns for the
Lucchese crime family.  This information supports the
inference that Lucchese family crews, including yours,
employed violence to promote the goals of the criminal
organization.  Therefore, it also indirectly supports the
credibility of Casso's statements linking you, a member and
leader in the crime family, to murders and attempted murder.

In sum, you have not demonstrated that the information from
AUSA Kelley alleging your responsibility for murders and
murder plots is unreliable and should not be used to deny
you parole.  Any one of these crimes (the Schleifer,
DeCicco, and Taglianetti murders and the attempt to murder
Abinanti) would result in a prole denial under the policy at
28 C.F.R. §2.20, Offense Behavior Severity Index, Notes to
Category Eight offenses.

(Document 20, Exhibit 21)

The Parole Commission's written decision dated April 24,

2001, forms the basis of Furnari's current § 2241 petition.

Furnari asserts the following 4 claims in his petition:

A.  The Parole Commission violated due process, the
controlling statute, its own regulations and the law of the
case, when it failed to provide adequate reasons for
crediting information supplied by a mob informant whom the
government concedes has lied.

B.  The Parole Commission violated the ex post facto clause
by relying on a provision of its regulations which created a

11

significant risk of prolonging Mr. Furnari's incarceration, as compared with the provision in effect at the time of commission of the conviction offenses.

C.   The Parole Commission's decision rests on evidence lacking sufficient indicia of reliability to satisfy due process or the governing statutory criteria, as authoritatively interpreted in the [Parole Commission's] own rules, and without a basis in fact.

D.   The Parole Commission's reliance on conduct other than the offenses of conviction to set petitioner Furnari's offense severity category violates the Commission's own rules as well as due process.

(Document 7, pp. i-ii)  We will address Furnari's claims in the

order in which they appear in his petition.

Before turning to Furnari's specific arguments, it is

necessary to observe a number of general principles which govern

our review of a decision made by the Parole Commission.  It is

well settled that the determination of eligibility for parole has

been committed by Congress to the discretion of the Parole

Commission. United States v. Addonizio, 442 U.S. 178 (1979);

Campbell v. Parole Commission, 704 U.S. 106 (3d Cir. 1983).  In

reviewing such a decision, "[o]ur standard of review of the

Parole Commission's determination is extremely deferential."

Furnari v. Parole Commission, 218 F.3d 250, 252 (3d Cir. 2000).

The Court of Appeals for the Third Circuit has held that

[t]he appropriate inquiry is not whether the [Commission's decision] is supported by the preponderance of the evidence or by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusion embodied in its statement of

12

reasons.

Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976).

The final preliminary point is that Furnari's petition is peppered with numerous references to alleged violations of his due process rights.  As a general rule, the only due process rights arising from a parole determination are the rights to a hearing and a statement of reasons for the Parole Commission's decision. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  We note that Furnari was provided with both a hearing and a statement of reasons.  Consequently, Furnari has not linked any of his allegations to a recognized due process right.  Our inquiry now turns to the specific claims raised in Furnari's § 2241 petition.

In his first claim, Furnari argues that the Commission unlawfully "failed to provide adequate reasons for crediting information supplied by a mob informant ...." (Document 7, p. 17) Furnari apparently seeks to imposes upon the Parole Commission the obligation of stating its reasons not only for its parole determinations but also for its credibility determinations.  The implicit premise is that the Parole Commission is obligated to state the reasons for its credibility determinations.  Furnari cites no authority expressly extending the Parole Commission's duty to make such determinations.

13

We are of the view that the Parole Commission does not have such a duty. The scope of the Parole Commission's obligation regarding its statement of reasons is found at 18 U.S.C. § 4206(b) which applies to the particularity of the reasons <u>for a denial of parole</u>. <u>See also</u> 28 C.F.R. § 2.13(c)("... the hearing examiner shall discuss the decision to be recommended ... and the reasons therefor ..."). That statute and regulation are the only sources Furnari cites in support of his position. Those laws do not impose an obligation on the Parole Commission to state its reasons for believing or disbelieving any witness.

Such a conclusion receives additional support from the governing precedent, including the reported decision in Furnari's prior appeal. The Court of Appeals for the Third Circuit has consistently maintained that

> [w]e do not find it either overly intrusive or contrary to the statute to require the Commission, which is under a statutory mandate to "state with particularity the reasons for [parole] denial," to truly provide reasons. We believe that a statement of reasons must reveal reasoning, and not simply present conclusions, at least where that reasoning is not apparent from the facts of the case.

Furnari, 218 F.3d at 256 (quoting Marshall v. Lansing, 839 F.2d 933, 942-43 (3d Cir. 1988)). Numerous decisions from other Courts of Appeals confirm our view that it "is not the function of the courts to review the discretion of the Board [of Parole] in the denial of applications for parole, or to repass on the

credibility of reports and information received by the Board in making its determinations." Brest v. Ciccone, 371 F.2d 981, 982 (8th Cir. 1967); Hackett v. U.S. Parole Commission, 851 F.2d 127, 131 (6th Cir. 1987)("we have no power to overturn a credibility determination made by the Commission"); Maddox v. U.S. Parole Commission, 821 F.2d 997, 999-1000 (5th Cir. 1987)("it is not the function of the courts to review the discretion of the Board in the denial of application for parole or to review the credibility of reports and information received by the Board in making its determination"); Fiamura v. O'Brien, 889 F.2d 254, 257 (10th Cir. 1989)("Appeal courts may not reweigh evidence, repass on the credibility of reports, or substitute their judgment for that of the Commission."); Billiteri v. U.S. Bd. Of Parole, 541 F.2d 938, 944 (2d Cir. 1976)(quoting Brest, supra.).

With respect to this case specifically, the "reasons" examined in Furnari's prior appeal concerned the Parole Commission's "determination that Furnari was a Category Eight." Furnari, 218 F.3d at 256. The grounds for reversal by the Court of Appeals in Furnari's prior appeal were the inability

> to tell ... whether the Parole Commission continue[d] to rely on Casso and find him credible, or [had] concluded that there [was] sufficient additional information tying Furnari to murder to conclude that he is a Category Eight even absent the information provided by Casso.

Id. at 257. Our interpretation of that passage indicates that

the Parole Commission had the duty to address only the question of _whether_ it found Casso reliable.  We do not read the Court of Appeals' decision as requiring the Parole Commission to state the reasons _why_ it found Casso credible.  One basis to deny Furnari any relief pursuant to his first claim is that it is grounded on a purported duty or obligation which the law does not impose upon the Parole Commission.

There is a second basis to reject Furnari's first claim. The government in this case reads the Court of Appeals' _Furnari_ decision as imposing upon it the obligation "to explain its credibility determinations in light of the Stamboulidis affidavit." (Document 19, p. 23)  For the purposes of addressing that concession, we will accept the government's statement as true.

In its statement of reasons for concluding that Furnari's offense severity level qualifies for Category Eight, dated April 24, 2001, the Parole Commission commented that "Casso's information about your involvement in these crimes is accurate. The reasoning is as follows."  In the second paragraph of its April 24, 2001, decision, the Parole Commission thus answered the question highlighted by the Court of Appeals in its reported decision by concluding that Casso remained credible despite the information in the Stamboulidis affidavit.

16

In addition, the Parole Commission continued to express, in the nine additional paragraphs of its decision, the reasons for determining <u>why</u> it found Casso credible.  Those reasons, which are set forth above in their entirety, include inferences fairly drawn from the record, information corroborating Casso's assertions (including Carew's testimony in another case), Kelley's "assurance ... as to Casso's credibility regarding [Furnari's] responsibility for the crimes, " and the precise language of the Stamboulidis affidavit. (Document 20, Exhibit 21, p. 2)  Thus, even if the Parole Commission does have an obligation to state its reasons for crediting Casso, it has fulfilled that obligation in this case.  In doing so it has provided all of the process due Furnari.[6]  Furnari's first claim is without merit.

His second claim is that the Parole Commission violated the ex post facto clause of the Constitution when it relied on a regulation promulgated after Furnari's conviction "which created a significant risk of prolonging Mr. Furnari's incarceration, as compared with the provision in effect at the time of commission

_____

6.  The title of Furnari's first claim implicates a violation of his due process rights.  That purported violation appears to result from the alleged deficiencies in the Parole Commission's statement of reasons issued on April 2, 1999.  Our discussion regarding that statement of reasons applies with equal force to Furnari's due process claim.  That claim is meritless.

17

of the conviction offenses." (Document 7, p. 17)

The language at issue is found in a note accompanying the regulation found at 28 C.F.R. § 2.20. The version of that note which had been in effect when Furnari was convicted provided in its entirety as follows:

> Note: For Category Eight, no upper limits are specified due to the extreme variability of the cases within the category. For decisions exceeding the lower limit of the applicable guideline category by more than 48 months, the Commission will specify the pertinent case factors upon which it relied in reaching the decision, which may include the absence of any factors mitigating the offense. This procedure is intended to ensure that the prisoner understands that individualized consideration has been given to the facts of the case, and not to suggest that a grant of parole is to be presumed for any class of Category Eight Offenders.

28 C.F.R. § 2.20, Note (1982). The version of that note applied to Furnari included not only the text quoted above, but also the following text, which was added in 1994:

> However, ... a contract murder, ... or a murder carried out to further the aims of an ongoing criminal operation, shall not justify a parole at any point in the prisoner's sentence unless there are compelling circumstances in mitigation (e.g., a youthful offender who participated in a murder planned and executed by his parent). Such aggravated crimes are considered, by definition, at the extreme high end of Category Eight offenses. For these crimes, the expiration of the sentence is deemed to be a decision at the maximum limit of the guideline range. (The fact that an offense does not fall under the definition contained in this rule does not mean that the Commission is obliged to grant a parole.)

28 C.F.R. § 2.20, Note (1994).

The United States Constitution forbids *ex post facto* laws.

U.S. Const. Art. I, §§ 9 & 10.  The Ex Post Facto Clause is
directed at laws that retroactively alter the definition of a
crime or that increase the punishment for criminal acts.
California Dept. of Corrections v. Morales, 514 U.S. 499, 504,
115 S. Ct. 1597, 1601 (1995).  In general, the two prerequisites
for concluding that a law violates the Ex Post Facto Clause are
that the law be 1) retrospective, and 2) disadvantageous to the
offender affected by it. Weaver v. Graham, 450 U.S. 24, 29, 101
S. Ct. 960, 964 (1981).

The United States Supreme Court has further stated that
"[r]etroactive changes in laws governing parole of prisoners, in
some instances, may be violative of this precept." Garner v.
Jones, 529 U.S. 244, 250, 120 S. Ct. 1362, 1367 (2000).  In such
cases

> [w]hether retroactive application of a particular change in
> parole law respects the prohibition on *ex post facto*
> legislation is often a question of particular difficulty
> when the discretion vested in a parole board is taken into
> account.

Id.  The standard to be applied when the law at issue relates to
parole is "whether retroactive application of the change ...
create[s] 'a sufficient risk of increasing the measure of
punishment attached to the covered crimes.'" Id. (quoting
Morales, 514 U.S. 509, 115 S. Ct. 1597.  The issue has also been
stated as "whether [the law to be retroactively applied] creates

19

a significant risk of prolonging [the inmate's] incarceration."
Id., 529 U.S. at 251, 120 S. Ct. at 1368.  The United States
Supreme Court has further commented that "[t]he question is a
matter of degree." Id. (internal quotations omitted).

On its face, the retroactive change in the regulation at
issue in this case augments the burden imposed upon inmates
convicted of

> a murder committed to silence a victim or witness, a
> contract murder, a murder by torture, the murder of a law
> enforcement officer to carry out an offense, or a murder
> committed to further the aims of an on-going criminal
> operation.

28 C.F.R. § 2.20, Note 1 (1994).  The retroactive change
challenged by Furnari provides that parole is not available to
one who committed such an offense "unless there are compelling
circumstances in mitigation ...." Id.  The Parole Commission
explained in the Federal Register its rationale for the amendment
as follows:

> The offense behaviors committed by these prisoners are so
> inherently serious that a parole would not be justified at
> any point in the guideline range unless the Commission could
> articulate a clearly significant circumstance in mitigation.

59 Fed. Reg. 25813 (May 18, 1994).

We acknowledge, as the government contends, that the Parole
Commission has always been entitled to exercise a great deal of
discretion in making parole decisions.  The legitimacy of that
discretion is beyond question.  The issues in this case relate

20

strictly to the manner in which that discretion is exercised.

The regulations existing when Furnari committed his offenses did not impose upon him the burden of establishing any compelling mitigating circumstances.  Although the Parole Commission may well have denied an inmate's application for parole in the absence of such circumstances, the prior regulations did not require inmates to make such a showing.

In imposing such a requirement, the retroactive change in the regulation has altered the manner in which the Parole Commission exercises its discretion.  The change imposes a substantively different and more rigorous standard upon inmates within its scope.  Our attention is drawn to the term "compelling" in the regulation, and the phrase "clearly significant" in the explanation provided Federal Register.  Such terms clearly indicate a heightened standard of review.

We are of the view that the retroactive change challenged by Furnari creates a substantial risk that inmates within its scope will be subjected to prolonged periods of detention.  We will grant his habeas petition in part by requiring the Parole Commission to apply the previous regulation to Furnari in deciding his eligibility for parole.

That conclusion does not eliminate the need to address the remaining 2 claims in Furnari's petition because Furnari seeks

21

immediate release pursuant to those claims.

Furnari's third claim is that the Parole Commission's decision is unlawful because it is based on evidence which is "lacking sufficient indicia of reliability." (Document 7, p. 21) To a large extent this argument is merely a restatement of Furnari's first claim. Our reasons stated above in connection with that claim apply to this claim as well.

We also note that none of the cases cited by Furnari in support of this argument addresses facts similar to those of this case. We are not persuaded by any of the authorities he has cited. However, that is not the only reason to reject this claim.

With respect to his factual assertions, Furnari supports this argument by pointing to allegedly inconsistent representations made by Kelley throughout Furnari's parole proceedings. After thoroughly reviewing the record, we are not convinced that Furnari has fairly presented the facts. Furnari mischaracterizes the substance of Kelley's representations.

For instance, on page 23 of his initial brief Furnari asserts that Kelley knew Furnari was not involved in Schleifer's murder because "AUSA Kelley's own submission ... [reported] that [Furnari] did not become a capo until the 'late seventies,' ... long after Schleifer's murder." The clear implication arising

22

from that statement is that Kelley made a single "submission" and
that "submission" supports Furnari's position.

The document Furnari cites in support of that assertion is a
letter written by Kelley dated December 4, 1995.  That letter
states in pertinent part that "D'Arco has identified Furnari as a
Luchese[7] capo in the late seventies and early eighties, ...."
(Document 8, Ex. C, p. 1) That portion of Kelley's letter merely
cites one of Kelley's sources on the subject of Furnari's
activities.  The record indicates that Kelley had other
information from additional sources relating to other periods.  A
second "submission" is Kelley's letter of August 1, 1996, in
which he states that "the witnesses report that Furnari – who was
a capo at the time ...." (Document 20, Exhibit 2, p. 2)  The
"time" referenced in that letter was "the mid-1970's." (Id.)

Furnari simply discounts that other information on the basis
of his other contentions (i.e., lack of reliability or
credibility).  However, we have concluded that those other
contentions are without merit.  We are of the view that the
Parole Commission had a rational basis to accept and rely upon
the information received at Furnari's last parole hearing.  For
the reasons discussed above, Furnari is not entitled to any

---

7.  Throughout the numerous court proceedings involving Furnari,
he and government have represented the spelling of this family's
name as "Luchese" and "Lucchese."

relief on his third claim.

Furnari's fourth and final claim is that the Parole Commission unlawfully relied on conduct outside the scope of Furnari's convictions to classify his offense characteristics as Category Eight. He specifically argues that the Parole Commission "set the Offense Severity rating under the guidelines for him on a basis entirely separate from and unrelated to 'the offense' for which he was convicted." (Document 23, p. 12)

A thorough understanding of the facts underlying Furnari's convictions is necessary to evaluate the merits of this final claim. The indictment, presentence report, and other information in the record before us clearly demonstrate that Furnari's ascension within the Lucchese crime family to the role of a high ranking officer was a prerequisite for his membership on the "Commission." His service as consigliere, which could not have occurred without prior service as a capo, was a necessary predicate for participation in the crimes alleged in the indictment. Furnari's participation in the Lucchese crime family was an inherent factual component of the indictment. The Parole Commission had a rational basis for attributing to Furnari crimes actually committed by others in the Lucchese family. There was a rational basis for the Parole Commission to conclude that Furnari's co-conspirators were not only the co-defendants named

in the indictment, but also other Lucchese family members committing crimes on behalf of, and in furtherance of, that family's criminal activities.

As Furnari concedes in his reply brief, "Title 18 U.S.C. § 4206(a) (1976) **requires** the Parole Commission to consider the "nature and circumstances of the offense." (Document 7, p. 26)(Bold added; underlining in original) We are of the view that the Parole Commission had a rational basis to conclude that the circumstances of the underlying offenses here encompass not only Furnari's position as a high ranking official within the Lucchese crime family but also crimes attributable to Furnari as a result of his occupying that position.

Since 1982 the Parole Commission's Guideline Application Manual has provided that

> [t]he prisoner is to be held accountable for his own actions and actions done in concert with others; however, the prisoner is not to be held accountable for activities committed by associates (over which the prisoner had no control or could not be reasonably expected to know about)

United States Parole Commission Guideline Application Manual III.E (1982). The final decision made by Parole Commission and challenged by Furnari incorporates that principle where it states that Furnari was

> the leader of a crew in the Lucchese crime family when the crimes were committed. Casso was a member of your crew. It is unlikely that you would be unaware of any murders or plots to murder others in order to fulfill the aims of the

25

criminal enterprise given the structure and discipline of
the crime family.

(Document 20, Exhibit 21, p. 1)

Since 1976, Title 18 U.S.C. § 4207, entitled "Information

considered," has provided that

[i]n making a determination under this chapter (relating to
release on parole) the Commission shall consider [certain
listed documents and information].  There shall also be
taken into consideration such additional relevant
information concerning the prisoner ... as may be reasonably
available.

18 U.S.C. § 4207 (1976).  At all relevant times, a governing

regulation has also imposed upon the Parole Commission the

obligation to consider "such additional relevant information

concerning the prisoner (including information submitted by the

prisoner) as may be reasonably available." 28 C.F.R. § 2.19(c).

The Court of Appeals for the Third Circuit has rejected the

contention that the Parole Commission is prohibited from

considering information which was not in the charging documents.

Campbell v. United States Parole Commission, 704 F.2d 106 (3d

Cir. 1983); Arias v. United States Parole Commission, 648 F.2d

196, 201 (3d Cir. 1981)(Parole Commission "acted neither

improperly nor unconstitutionally when it examined appellant's

presentence report which included information relating to a

separate, dismissed indictment"); United States ex rel. Goldberg

v. Warden, 622 F.2d 60 (3d Cir. 1980); Zannino v. Arnold, 531

F.2d 687 (3d Cir. 1976)(reports linking a prisoner to large-scale organized criminal activity provided a sufficient basis for a Board determination to deny parole); See also Christopher v. United States Board of Parole, 589 F.2d 924, 932 (7th Cir. 1978) ("Paroling authorities are not limited to consideration of formally adjudicated crimes in determining the likelihood of a prisoner's success, if released on parole.")

There is a rational basis for the Parole Commission to conclude that the murders and attempted murder which have been linked to Furnari are sufficiently relevant for its consideration in denying his application for parole. The fact that those crimes may not have been charged in Furnari's indictment is of no consequence. See Campbell v. United States Parole Commission, 704 F.2d 106, 112-113 (3d Cir. 1983)(Parole Commission could consider murder committed by inmate's confederates and not in inmate's indictment as an aggravating factor of inmate's offense); McArthur v. United States Bd. Of Parole, 434 F. Supp. 163 (S.D. Ind. 1976, aff'd mem., 559 F.2d 1226 (7th Cir. 1977)(Parole Board could increase inmate's offense severity level based on offense committed by inmate's confederates and not in inmate's indictment). McArthur was cited approvingly in Campbell. The case law does not support Furnari's contention that the Parole Commission may not consider conduct beyond the scope of the

indictment when calculating an inmate's offense severity level. Furnari is not entitled to any relief based on his fourth claim.

We will grant Furnari's petition with respect to his *ex post facto* claim and deny the petition in all other respects.

NOW, THEREFORE, IT IS ORDERED THAT:

1.  Furnari's petition for writ of habeas corpus (Document 1) is granted in part and denied in part as provided in paragraphs 2 and 3 of this order.

2.  The Parole Commission shall, within 60 days after the date of this order, reevaluate Furnari's application for parole in accordance with the version of 28 C.F.R. § 2.20 in effect when Furnari committed the underlying offenses.

3.  Furnari's petition for writ of habeas corpus is denied in all other respects.

4.  The Clerk of Court shall close this case.

_____
MUIR, U. S. District Judge

MM:ga